STATE *ex rel.* NICHOLSON *v.* N. P. BUSH.

(*Knoxville.*   September Term, 1916.)

**PARDON.  Parole.  Arrest.**

Under Acts 1913, chapter 8, providing for indeterminate sentences
and for parole of convicts, section 3 of which provides that
the convicts, while on parole, shall remain in the custody of the
board of parole and under its control, subject at any time to be
returned to the penitentiary, a convict on parole is still within
the custody of the State, and cannot be confined in the county
workhouse under a former conviction for a petty offense, any
more than he could while he was still within the penitentiary.

Acts cited and construed. Acts 1913, ch. 8.

Case cited and approved:  Woods v. State, 130 Tenn., 100.

FROM HAMILTON.

Appeal from the Criminal Court of Hamilton County
to the Court of Civil Appeals, and by *certiorari* to
the Court of Civil Appeals from the Supreme Court.
—S. D. McREYNOLDS, Judge.

GEORGE W. CHAMLEE, for plaintiff.

NEAL L. THOMPSON, for defendant.

Mr. Evans, Special Judge, delivered the opinion of the Court.

This is a *habeas corpus* case, instituted in the criminal court of Hamilton county by relator, Bass Nicholson, against N. P. Bush, sheriff of that county, for the purpose of obtaining his liberty or procuring his release from the custody of defendant. On the trial in the criminal court relator's petition was dismissed, and an appeal was taken to the court of civil appeals, where the judgment of the lower court was reversed and the prayer of the petition granted. Thereupon the case was brought to this court by the writ of *certiorari.*

It appears from the record that in November, 1913, Nicholson was convicted in the criminal court of Hamilton county of assault with intent to commit murder in the second degree, and was sentenced to the penitentiary for a period of not less than one nor more than five years; and at the same term of said criminal court he was also convicted of the charge of carrying a pistol, and upon the latter conviction was sentenced to the county workhouse for a period of eleven months and twenty-nine days. From neither of these judgments did Nicholson appeal. He was therefore sent to the penitentiary at Nashville, upon the felony conviction, and, after being confined there for about two years, was, on account of satisfactory behavior and good conduct, granted a certificate of parole.

In this certificate it was recited that the board of parole for the State of Tennessee, having confidence in Bass Nicholson, and desiring to test his character and ability to refrain from crime and lead an honorable life, had granted said parole under certain specified conditions therein set out. Some of these conditions were that the prisoner should proceed to a place of employment provided for him at Chattanooga, Tenn., (designating the place); that on the first day of each month he should report certain facts to the parole officer upon blank forms to be furnished him; that these reports must be certified by his employer; that he "shall while on parole, remain in the legal custody of the board of parole;" and that he "shall be liable to be retaken and again confined within the State penitentiary for any reason that shall be satisfactory to the board of parole and at their sole discretion." He was then advised how he should live and conduct himself, and was admonished against bad habits and evil associations. This certificate was accepted in writing by the prisoner, and he pledged himself to comply with all of its conditions.

Thereupon the relator returned to Chattanooga, took up the specified employment, and was living in good faith in conformity to the conditions of his certificate of parole. Soon thereafter, in November, 1915, a *capias* was issued for his arrest and confinement in the county workhouse upon the old pistol case, in which he was convicted in May, 1913. The

sheriff, defendant, Brush, arrested him under said *capias,* and had him under arrest, when the petition for *habeas corpus,* now before us, was filed.

The case therefore requires a construction of chapter 8, of the Acts of 1913, which is an act to provide for the indeterminate sentence of persons convicted of crime, and to authorize and regulate the paroling of prisoners so sentenced. This act was held constitutional in *Woods* v. *State,* 130 Tenn., 100, 169 S. W., 558, L. R. A., 1915F, 531. The question here presented is whether relator, while on parole, was still in the custody of the State so as to preclude his arrest and confinement upon the above-mentioned conviction for carrying a pistol. We think he was in such custody, and that his attempted confinement in the workhouse was un- authorized by law.

In contemplation of law, relator was in the custody of the penitentiary authorities to the same extent as if he had remained in actual confinement. In section 3 of the act it is specifically provided:

"Such convicts, while on parole, shall remain in the lawful custody and under the control of said board, subject at any time to be returned to the penitentiary," etc.

If relator had remained within the physical con- fines of the penitentiary, it would not be contended that he could be taken therefrom, under the old con- viction for carrying a pistol, and placed in the county workhouse. And yet, under the act of 1913, a prison-

er on parole is still, to all intents and purposes, in the penitentiary and subject at any time to physical confinement therein. He is still in the custody of the penitentiary officials, the board of parole.

We are of the opinion that the court of civil appeals was correct in releasing relator from the custody of defendant sheriff, and the judgment of that court is therefore affirmed.