David Garland HOWELL, Petitioner,

v.

STATE of Tennessee, Respondent.

Supreme Court of Tennessee.

July 31, 1978.

Gus D. Hatfield, Jr., Hatfield, McColpin, Morgan, Nielsen & Van Cleave, Chattanooga, for petitioner.

Brooks McLemore, Jr., Atty. Gen., Patricia J. Cottrell, Asst. Atty. Gen., Nashville, Gary Gerbitz, Dist. Atty. Gen., Stanley Lanzo, Asst. Dist. Atty. Gen., Chattanooga, for respondent.

## OPINION

HENRY, Chief Justice.

We granted certiorari in this criminal action arising under the Post-Conviction Procedure Act (§ 40–1801, et seq., T.C.A.) to deal with the troublesome and recurring problem of the proper method of computing

parole eligibility in cases wherein consecutive determinate or life sentences are imposed.[1]

## I.

Petitioner pled guilty on February 20, 1974, to two charges of first degree murder. In this petition he does not deny guilt but insists that he agreed to plead guilty and take consecutive life sentences because his attorney and the trial judge advised him that he would be eligible for parole earlier under two consecutive life sentences than under the two consecutive thirty-five year sentences upon which he was insisting.

The Court of Criminal Appeals found as a fact that "his lawyers apparently told him that his parole eligibility date would come sooner on consecutive life sentences than on the thirty or thirty-five year consecutive sentences which he hoped for; and that the trial judge advised him according to T.C.A. § 40–3613 as it existed prior to amendment in April 1973 [2] . . . that life sentences would be treated the same as twenty-five year sentences for purposes of service." Thereafter, the Court of Criminal Appeals held:

> Unquestionably Howell agreed to the life sentences under mistaken advice as to their true effect.

We accept these findings made by the Court of Criminal Appeals; however, we cannot accept that court's conclusion that "the mistake really makes no difference in terms of parole eligibility" and that in either case he is "eligible for parole after 30 full calendar years." [3] This conclusion not only overlooks significant aspects of consecutive sentencing but *sub silentio* is premised upon a treatment of two or more consecutive sentences as being a single sentence.

## II.

The Court of Criminal Appeals, in arriving at a total service of 30 years, in effect, held that the two consecutive sentences of thirty or thirty-five years should be combined and eligibility computed on the basis of a single sentence of sixty to seventy years, subject to the maximum limitation of thirty full calendar years, as set forth in § 40–3613, T.C.A. The facts show that the alternative sentence was either to be 30 or 35 years. For sake of clarity we will assume a 35 year figure. Graphically, this is the resulting situation, according to the Court of Criminal Appeals and the state:

| 30 years | 40 years [*] |
|---|---|
| IN PENITENTIARY | ON PAROLE |

This, according to the Court of Criminal Appeals, is the same as two consecutive life sentences because of the same limitation of thirty years.

We reject this reasoning. It assumes a *single* sentence of 70 years and a *single* life sentence. If this were the situation, we would agree with the Court of Criminal Appeals; however, we are not dealing with single sentences but with two consecutive sentences.

§ 40–3613, T.C.A., reads in pertinent part:

[A]ny person who shall have been convicted and sentenced to *a* term of impris-

---

1. Other than the death penalty Tennessee has three types of felony sentences, *viz.*, determinate, indeterminate and life. A determinate sentence is one in which the jury fixes a specific sentence with no minimum or maximum. See §§ 40–2707 and 2708, T.C.A., for a listing. Generally speaking, all other sentences, except life sentences, are indeterminate. This opinion has no bearing on indeterminate sentences and relates solely to parole eligibility.

2. Chapter 370, Public Acts of 1973, effective May 6, 1973, changed the maximum period of service, for parole eligibility purposes, of a life sentence from 25 to 30 years.

3. The Court of Criminal Appeals specifically held that the "parole eligibility date is exactly the same" under the consecutive 30–35 year sentences and two consecutive life sentences. We disagree.

* Actually a prisoner in this situation is not on parole for the full 40 years because good conduct credits reduce the parole time and the prisoner is discharged or builds his sentence in 36 years and 1 month on a 70 year sentence. See § 40–3622 and footnote 6, infra. The result is that he is on parole for a total of 6 years and 1 month.

onment in the state penitentiary for *a* period or term of sixty-five (65) years or more, or life, may become eligible for parole provided such person shall have been confined or served *a* term in the state penitentiary of not less than thirty (30) full calendar years . . . . (Emphasis supplied.)

 It is self-evident that this statute does not contemplate consecutive sentences. It originated as Sec. 3, of Chapter 8, Public Acts of 1913 (the indeterminate sentence law) and has no application to determinate sentences, with the exception of life sentences—but not to multiple life sentences.

 The parole eligibility date on a determinate sentence is set by § 40–3612 at "one half (½) of *the* sentence imposed by the court." (Emphasis supplied).[4] This section originated as a part of Chapter 276 of the Acts of 1937; it contains no provision for aggregating sentences and also is singular in concept.

 The Court of Criminal Appeals cites no authority for the concept of cumulating the sentences. The State's brief, however, supporting the position taken by the Court of Criminal Appeals, relies upon § 40–2710, T.C.A., for the proposition that if a person is sentenced for two or more separate offenses, the total of the sentences should be treated as one continuous term of imprisonment.[5] This insistence

completely ignores the fact that this Code section was lifted verbatim from Section 1, Chapter 8, Public Acts of 1913, which created Tennessee's Indeterminate Sentence Law, and has no application to determinate sentences. The indeterminate sentence law does not apply to murder in the first degree. *Franks v. State*, 187 Tenn. 174, 213 S.W.2d 105 (1948).

We reject the approach taken by the Court of Criminal Appeals and the position advocated by the state.

### III.

The petitioner takes the position that two consecutive thirty-five year sentences are significantly more advantageous in terms of parole eligibility to two consecutive life sentences.

His reasoning is ingenious and superficially plausible. He argues that when one is sentenced to two consecutive sentences, the second does not commence until the first has expired. Thus, he says that a 35 year sentence, under § 40–3612, is "built" in seventeen and one-half years, assuming all other conditions of parole eligibility have been met, and that at that time he is entitled to be released for the second half, or seventeen and one-half years. He would not begin to serve his second 35 year sentence until his 17½ years of parole on his first 35 year sentence had expired. Graphically, this is his insistence:

| 17½ Years | 17½ Years | 17½ Years | 17½ Years |
|---|---|---|---|
| PENITENTIARY | PAROLE | PENITENTIARY | PAROLE |

He relies very heavily upon *Doyle v. Hampton*, 207 Tenn. 399, 340 S.W.2d 891 (1960). Dicta in *Doyle* is supportive of petitioner's petition; however, all *Doyle* actually holds is that Doyle's right to a parole rested in the discretion of the Board of Pardons and Paroles.

Doyle was sentenced to life imprisonment for rape and to five to twenty-five years for robbery, with the robbery sentence to run consecutively with the rape sentence. It was Doyle's insistence that the rape sentence was a nullity because the life sentence never expires.

4. There is no diminution for good conduct for *parole purposes* on a determinate sentence. *McFadden v. State*, 532 S.W.2d 944 (Tenn.Cr. App.1975).

5. Sec. 40–2710 provides: "If a person be sentenced for two (2) or more such separate offenses, sentence shall be pronounced for each

offense, and imprisonment thereunder may equal, but shall not exceed, the total of the maximum terms provided by law for such offenses, which total shall, for the purpose of §§ 40–2707—40–2710, be construed as one (1) continuous term of imprisonment."

Justice Burnett, writing for the Court, approached the matter with characteristic simplicity:

Parole, under our statutes, is nothing more than *a conditional suspension of sentence.* See *State ex rel. Neilson v. Harwood,* supra [183 Tenn. 567, 194 S.W.2d 448], for a full discussion of the question. *The sentence of the man does not expire because of the parole,* nor during the pendency of the parole. *He during this time is still in the custody* of the penal authorities of the State and subject to the provisions upon which he has been paroled. *State ex rel. Nicholson v. Bush,* 136 Tenn. 478, 190 S.W. 453. During this period of parole the prisoner, or petitioner as in this case, cannot be re-arrested under a capias, *or whatnot,* and placed in the penitentiary, jail or workhouse under a conviction had prior to the conviction upon which he is serving as a parolee from the State penitentiary. See *State ex rel. Nicholson v. Bush,* supra. So it is, that *so long as the petitioner, or prisoner, is serving as a parolee under his term of confinement of life he remains on parole or under confinement* of this sentence. The sentence for robbery, *of course, is held in abeyance until the life sentence is served* and it does not become effective for any *purpose until the life sentence expires,* or the prisoner has had a complete pardon under this sentence. Of course, under the life sentence, the prisoner, or petitioner here, *cannot be made to serve the term for robbery because the life sentence continues as long as there is life, or a pardon has been granted.* (Emphasis supplied.) 207 Tenn. at 403–404, 340 S.W.2d at 893.

We do not here quarrel with these generalized statements of the law; however, we note that they are, in part, inconsistent with prevailing practices. Perhaps, they would permit the conclusion reached by the petitioner but we do not believe they mandate a result that would erode, if not destroy, the whole concept of consecutive sentencing. The petitioner's position, as well as that taken by the Court of Criminal Appeals and the respondent, would wholly and utterly nullify consecutive life sentences and would discount and dequantitate consecutive sentences for terms of years.

## IV.

The State, in brief, correctly cites the philosophy behind the imposition of consecutive sentences as being "confinement for such term [as] is necessary in order to protect the public from criminal conduct by the defendant," and then goes on to say that "[o]bviously, this philosophy would have no practical basis if consecutive sentences were given the effect petitioner urges."

In reaching this conclusion, the State, as did the Court of Criminal Appeals, relies upon the cumulative approach, with a resulting maximum of a total of thirty (30) years. Quite aside from the fact that this maximum has no application in cases involving determinate consecutive sentences, by parity of reasoning the same maximum, if applicable, would apply to multiple consecutive life sentences. The result would be that all murders beyond the first would be "on the house" and that society could protect itself only to the extent of the first murder.

We have no statutory limitation on the number of years a convicted criminal may be required to serve under consecutive determinate sentences.

We reject the conclusion reached by the Court of Criminal Appeals, the position advanced by the State, and the approach made by the petitioner. In so doing we neither follow nor decline to follow any particular statutory scheme, since none is controlling and none is particularly relevant.

We think the concept of consecutive sentencing, judiciously administered by trial judges and reviewed on a fair and meaningful basis by the appellate courts, is in the public interest. It is an established part of our system of criminal jurisprudence and has become a part of the public policy of our state, both by statutory and decisional law.

The theory of consecutive or cumulative sentencing is that where a criminal defendant has been convicted of two or more offenses, his malefactions may merit separate and cumulative penalties. *Bundy v. State*, 176 Tenn. 198, 140 S.W.2d 154 (1940).

When separate convictions are obtained and separate sentences are decreed, they "run concurrently or cumulatively in the discretion of the trial judge" (§ 40–2711) and, in the absence of a specific order, they run concurrently. *Headrick v. State*, 519 S.W.2d 403 (Tenn.Cr.App.1974). See also Tenn.R.Crim.P., § 32(a) and (b). Thus the statutory and decisional law recognize that consecutive sentences are awardable both to protect the public and punish the offender by requiring that two or more sentences be served successively.

In our recent case of *Gray v. State*, 538 S.W.2d 391 (Tenn.1976), we dealt with the matter of consecutive sentences and established guidelines for their imposition. Among other things we said:

> Essentially, a consecutive sentence should be imposed only after a finding by the trial judge that confinement for such a term is necessary in order to protect the public from further criminal conduct by the defendant.
>
> \* \* \* \* \* \*
>
> The object is to use consecutive sentencing, where appropriate, to protect society from those who are unwilling to lead a productive life and resort to criminal activity in furtherance of their anti-societal lifestyle. 538 S.W.2d at 393.

## V.

Our solution to this troublesome problem, wherein guidance is lacking and precedent is not conclusive, derives its va-

lidity from the fact that we deal with separate and distinct determinate sentences which the trial judge has specifically ordered to be served consecutively. Our solution is further founded in the established legal proposition that a parole does not terminate the sentence nor does it terminate custody. Parole normally terminates confinement, but the parolee continues in constructive custody until the expiration of the full term of his sentence.

It is our duty to harmonize these considerations with the purpose of consecutive sentences and to arrive at a solution that simultaneously respects the interest of the state and protects the rights of the defendant. In doing so we reiterate that the fact of separate convictions and separate sentences is a controlling consideration.

We hold that two consecutive determinate sentences of thirty-five years each are served thusly:

a. The first 35 year sentence is served in 17½ full years, at the end of which the prisoner is *eligible* for regular parole. (§ 40–3612.)[6]

b. When parole is granted or the first sentence is otherwise completed, the second sentence is commenced *without an intervening period of release.*

c. During the ensuing 17½ years,[7] the prisoner simultaneously serves the first portion of his second sentence and, as a resident parolee, or cell-parolee,[8] completes the remaining portion of his first sentence.

d. At the end of the second 17½ year period he is eligible for parole and release from physical custody. (But see footnote 6.)

Graphically, we reach these results:

---

**6.** Other factors enter into the picture. The prisoner is *eligible* for probationary parole in 16½ years (§ 40–3612), for mandatory parole in 18 years and 1 month (§ 40–3614), and has fully satisfied or "built" his sentence in 18 years and 7 months (assuming the accumulation of all good and honor time). It is important to keep in mind that good and honor time affects the flat release date but does not count toward parole eligibility. *McFadden v. State*, 532 S.W.2d 944 (Tenn.Cr.App.1975).

**7.** See footnote 6.

**8.** See *In re Fitzpatrick*, 9 N.J.Super. 511, 75 A.2d 636 (Mercer County Ct.1950), affirmed 14 N.J.Super. 213, 82 A.2d 8 (App.Div.1951).

| 17½ Years | 17½ Years | 17½ Years |
|---|---|---|
| IN PENITENTIARY ON FIRST SENTENCE | _ _ CELL PAROLEE _ _ ON SECOND SENTENCE | ON PAROLE, SECOND SENTENCE |

The result, as applied to this petitioner, is that consecutive 35 year sentences are served in 35 full years of actual confinement (subject to the conditions listed in footnote 6).[9]

The same process of reasoning leads to the conclusion that consecutive life sentences entail 60 full years of actual confinement.[10] Again, we note that the 30-year limitation contained in § 40–3613, T.C.A., does not apply to consecutive determinate sentences. Graphically, this is the solution:

| 30 Years | 30 Years | Remainder of Life |
|---|---|---|
| FIRST SENTENCE | _ _ CELL PAROLEE _ _ ON SECOND SENTENCE | ON PAROLE, ON BOTH SENTENCES |

Any other conclusion would completely nullify consecutive life sentences. Reading § 40–3613 as insisted by the state would mean that a prisoner who committed one murder with resulting life sentence would serve 30 years. Precisely the same time would be served by a prisoner who had committed ten murders with ten consecutive life sentences. Two thirty-five year sentences would be served in thirty years; ten thirty-five year consecutive sentences would be served in the same 30 years. These results border on the ludicrous.

The result is that petitioner, who insisted on two thirty-five year sentences, with an assumed parole eligibility at the end of 30 or 35 years,[11] winds up with two consecutive life sentences with parole eligibility, as interpreted by this Court, coming only after he has served 60 years.

The thrust of his petition, as indicated by the Court of Criminal Appeals, is "that his constitutional rights were violated because he was misinformed and misled by appointed counsel and the trial court as to the consequences of his pleas of guilty, thereby rendering his pleas involuntary and defense counsel's representation ineffective."

9. Since parole release is such an important consideration, especially in bargained pleas of guilty the question of computation of parole needs to be stated simply where consecutive determinate sentences are involved. To compute a prisoner's "real" parole date, figure the regular parole dates on *each* sentence and add the resulting sentences together. Thus consecutive sentences of 20 and 30 years result in regular parole dates of 10 and 15 years respectively. The total of 25 years equals his regular parole date under paragraph two of § 40–3612. The fourth paragraph of § 40–3612 deals with probationary parole where the "prisoner has been accorded a bona fide offer of employment." We hold that this provision contemplates an *actual* parole from behind prison walls as opposed to the "in-house" parole discussed in sub-paragraph c of this section. Therefore the 1 year probationary parole is deducted from the aggregate regular parole dates, and not from each regular parole date. Thus, in the above example the aggregate parole date is 25 years minus 1 year probationary parole equalling 24 years, which is the earliest time the prisoner could expect a "real" parole. Another example would be sentences of 15, 20 and 30 years, with regular parole dates of 7½, 10 and 15 years respectively, the sum being 32½ years less 1 year probationary parole, which equals 31½ years for an expectation of a real parole. Mandatory parole under § 40–3614 also contemplates a "real" parole date and the above rules are applicable.

10. Parole eligibility on a life sentence can only occur in 30 years. Good and honor time do not reduce it. It is extinguished solely by the death of the prisoner or pardon.

11. See footnote 6.

Both the trial judge and defense counsel were dealing with what the majority opinion of this Court in *Farris v. State*, 535 S.W.2d 608 (Tenn.1976), classified as a "highly specialized area" of the law, and one in which "few practicing attorneys, otherwise knowledgeable in criminal law, or judges at any level" have a complete understanding. We cannot, and do not, hold, under these circumstances, that counsel was incompetent.

But the fact remains that, as held by the Court of Criminal Appeals, "Howell agreed to the life sentences under mistaken advice as to their true effect." He is entitled to relief.

We remand this case to the Criminal Court at Chattanooga. That court may (1) vacate the sentence and award a new trial or (2) enter judgment of two consecutive sentences of thirty or thirty-five years each, whichever term is appropriate.

This opinion is prospective only and shall have no effect upon those cases wherein parole eligibility dates have already been established or to cases already final in the trial court.

Reversed and remanded.

FONES, COOPER, BROCK and HARBISON, JJ., concur.