# IN THE SUPREME COURT OF TENNESSEE
## AT NASHVILLE
October 1, 2003 Session

## CLESSIE JACO, Jr. v. STATE OF TENNESSEE

**Appeal by permission from the Court of Criminal Appeals**
**Circuit Court for Maury County**
**No. 9854     Robert L. Jones, Judge**

_____

**No. M2001-02150-SC-R11-PC - Filed December 5, 2003**
_____

We granted permission to appeal in this post-conviction case to determine whether the Court of Criminal Appeals erred in holding that Mr. Jaco's guilty plea was knowingly and voluntarily entered even though he was not informed of the psychiatric certification mandated by Tennessee Code Annotated section 40-35-503(c) for sex offenders before release on parole. We hold that Mr. Jaco's guilty plea met the standard of knowing and voluntary. A defendant need not be informed of all criteria that affect his possible release on parole in order for his guilty plea to be constitutionally sound. Accordingly, the holding of the Court of Criminal Appeals is affirmed.

**Tenn. R. App. P. 11; Judgment of the Court of Criminal Appeals Affirmed**

FRANK F. DROWOTA, III, C. J., delivered the opinion of the court, in which E. RILEY ANDERSON, ADOLPHO A. BIRCH, JR., JANICE M. HOLDER, and WILLIAM M. BARKER, JJ., joined.

John S. Colley, III, Columbia, Tennessee, for the appellant, Clessie Jaco, Jr.

Paul G. Summers, Attorney General and Reporter; Michael Moore, Solicitor General; Kim R. Helper, Assistant Attorney General; T. Michael Bottoms, District Attorney General; and Larry Nickell, Jr., Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

### Factual and Procedural Background

Clessie Jaco was charged with two counts of rape of his thirteen-year-old niece. He pleaded guilty to two counts of attempted rape. Pursuant to the plea agreement, he received a six-year sentence on each conviction, which sentences the trial court ordered served consecutively. The Court of Criminal Appeals affirmed the trial court's denial of alternative sentencing and its decision to order consecutive sentences.

Thereafter, Mr. Jaco filed a timely petition for post-conviction relief, alleging that his plea was not knowingly, intelligently, and voluntarily entered because he was not advised of the effect of Tennessee Code Annotated section 40-35-503(c) (2003), which provides:

> No person convicted of a sex crime shall be released on parole unless a psychiatrist or licensed psychologist designated as a health service provider has examined and evaluated such inmate and certified that, to a reasonable medical certainty, the inmate does not pose the likelihood of committing sexual assaults upon release from confinement. The examination and evaluation shall be provided by psychiatrists or licensed psychologists designated as health service providers whose services are contracted or funded by the department of correction or the board of paroles. The board shall consider any such other evaluation by a psychiatrist or licensed psychologist designated as a health service provider which may be provided by the defendant.

Following a hearing, the post-conviction court found that at the time he entered the plea, Mr. Jaco understood that he would be eligible for parole and possible release after serving thirty percent of his sentence. Although Mr. Jaco's former attorney indicated that during the plea hearing he had advised Mr. Jaco about the implications of Tennessee Code Annotated section 40-35-503(c), the post-conviction court found that defense counsel probably had not provided this advice. Furthermore, the post-conviction court found that no sex offender had been released after serving only thirty percent of a sentence unless a mental health professional had opined that a future sex offense was physically impossible. Finally, the post-conviction court found that the trial court had failed to consider this statute when it accepted Mr. Jaco's plea and had commented that Mr. Jaco should be eligible for release after serving thirty percent of his sentence. Nonetheless, the post-conviction court ruled that counsel's failure and the trial court's comments did not affect the validity of his guilty plea. Accordingly, the petition for post-conviction relief was denied.

Mr. Jaco appealed, and the Court of Criminal Appeals affirmed the denial. We granted Mr. Jaco's application for permission to appeal to consider this issue of first impression.

## Standard of Review

To prevail upon a claim for post-conviction relief, a petitioner bears the burden of proving factual allegations by clear and convincing evidence. Tenn. Code Ann. § 40-30-110(f) (2003); Momon v. State, 18 S.W.3d 152, 156 (Tenn.1999). Where appellate review involves purely factual issues, this Court will not re-weigh or reevaluate the evidence. Momon, 18 S.W.3d at 156; Henley v. State, 960 S.W.2d 572, 578-79 (Tenn. 1997). The trial judge's findings of fact are afforded the weight of a jury verdict and are conclusive on appeal unless the evidence preponderates against those findings. Momon, 18 S.W.3d at 156; Henley, 960 S.W.2d at 578-79.

However, review of a trial court's application of the law to the facts of the case is de novo, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998). Whether a guilty plea meets the constitutional standards of voluntary and knowing is a mixed question of law and fact. See, e.g., United States v. Gray, 152 F.3d 816, 819 (8th Cir. 1998). Mixed questions of fact and law are reviewed de novo, with a presumption of correctness given only to the post-conviction court's findings of fact. See, e.g., Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## Analysis

Post-conviction relief may be granted only if a conviction or sentence is void or voidable because of a violation of a constitutional right. Tenn. Code Ann. § 40-30-103 (2003). The Due Process Clause of the United States Constitution requires that guilty pleas be knowing and voluntary. State v. Wilson, 31 S.W.3d 189, 194 (Tenn. 2001). The cases of Boykin v. Alabama and State v. Mackey are the landmark constitutional cases for analyses of guilty pleas. Boykin v. Alabama, 395 U.S. 238 (1969) (federal standard); State v. Mackey, 553 S.W.2d 337 (Tenn. 1977) (state standard). In Boykin, the United States Supreme Court held that before a trial judge can accept a guilty plea, there must be an affirmative showing that it was given intelligently and voluntarily. 395 U.S. at 242. In order to find that the plea was entered "intelligently" or "voluntarily," the court must "canvass [ ] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequences." Id. at 244. A plea is "knowing" if the court informed the accused of his constitutional rights against self-incrimination, to confront accusers, and to trial by jury. Id. at 243. Likewise, in Mackey, this Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea. . . ." 553 S.W.2d at 340. Any requirement in excess of Boykin is not based on the federal or state constitution. State v. Prince, 781 S.W.2d 846, 853 (Tenn. 1989). Therefore, in evaluating the knowing and voluntary nature of a guilty plea, "[t]he standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." North Carolina v. Alford, 400 U.S. 25, 31 (1970). The United States Supreme Court has "never held that the United States Constitution requires the State to furnish a defendant with information about parole eligibility in order for the defendant's plea of guilty to be voluntary." Hill v. Lockhart, 474 U.S. 52, 56 (1985).

Mr. Jaco does not contend that this plea agreement failed to meet the requirements of Boykin. He was informed of and indicated that he understood the constitutional rights that he waived by entering the guilty plea. Instead, Mr. Jaco argues that his plea was not knowingly and voluntarily entered because he was not informed of one of the criteria that guides the determination of whether he will actually be released upon arriving at his release eligibility date.

As support for this proposition, he relies on Howell v. State, 569 S.W.2d 428 (Tenn. 1978). In Howell, the defendant pleaded guilty to two counts of first degree murder with

consecutive life sentences. He later challenged the validity of these pleas because his attorney and the trial court had erroneously advised him that consecutive life sentences would result in an earlier parole eligibility date than would consecutive thirty-five-year sentences. Id. at 430. After clarifying the formula for determining parole eligibility for life sentences, this Court granted Mr. Howell relief because he had "agreed to life sentences under mistaken advice as to their true effect" on his parole eligibility date. Id. at 435. There are significant differences between this case and Howell. In Howell, the plea agreement was the direct result of inaccurate information that resulted in Mr. Howell agreeing to a longer prison term. In contrast, Mr. Jaco was not advised nor did he agree to a longer prison term on the mistaken belief that a longer term would result in an earlier release eligibility date. Indeed, had Mr. Jaco refused the plea agreement, he could have been tried on charges of rape, and if convicted, sentenced to a much lengthier sentence. See Tenn. Code. Ann. § 39-13-503(b) (classifying rape as a Class B felony) (2003); § 40-35-112(a)(2) (2003) (providing that a Range I sentence for each Class B felony is not less than eight months nor more than twelve years.)

Unlike the defendant in Howell, Mr. Jaco was not misinformed about his parole eligibility date. He will in fact become parole eligible after serving thirty percent of his sentence although he may not actually be released. His release eligibility date is simply the point at which he will be considered for parole under the applicable standards. "The release eligibility date provided for in this section is the earliest date an inmate convicted of a felony is eligible for parole. . . ." Tenn. Code Ann. § 40-35-501(k) (2003). After an inmate becomes parole eligible, release is not guaranteed. "Release on parole is a privilege, not a right...." Tenn. Code Ann. § 40-35-503(b) (2003). The Criminal Sentencing Reform Act includes the following criteria for denying release to a parole eligible inmate: 1) if there is substantial risk that the defendant will not conform to the conditions of the release programs; 2) if the release at that time would depreciate the seriousness of the crime or promote disrespect of the law; 3) if the release would have a substantially adverse effect on institutional discipline; or 4) if the inmate's continued correctional treatment, medical care, or vocational or other training in the institution will substantially enhance the inmate's capacity to lead a law-abiding life at a later release time. Id. For sex offenders, there is an additional prerequisite which must be satisfied before release on parole is appropriate – certification by a psychiatrist or licensed psychologist who has examined and evaluated the inmate that, to a reasonable medical certainty, the inmate does not pose the likelihood of committing sexual assaults upon release from confinement. Tenn. Code Ann. § 40-35-503(c) (2003).

In this case, the post-conviction trial court found that no sex offender has been released after serving only thirty percent of his sentence unless the mental health professional concluded that a future sex offense was physically impossible. Nonetheless, a Range I standard offender convicted of a sex crime becomes parole eligible after serving thirty percent of the actual sentence imposed. Tenn. Code Ann. § 40-35-501(c) (2003). The required evaluation affects the likelihood of actual release, but it does not affect the release eligibility date. Thus, unlike the defendant in Howell, Mr. Jaco received accurate information regarding his release eligibility date prior to entering his plea.

As grounds for invalidating his plea, Mr. Jaco relies upon the following statement of the trial court: "I frankly think that the service of a twelve year sentence would be more than this offense deserves. At the same time I know that it is highly unusual unless he engages in future misconduct that he would ever serve anything near twelve years. As a standard range one offender he would not have to serve more than thirty percent of the twelve year sentence of 3.6 years. . . I suspect that weighed heavily on the mind of the attorney general and his staff in reaching the decision to settle this case as it was settled." In our view, this statement provides no basis for invalidating the plea. Mr. Jaco apparently fails to recognize that the trial court made this statement after the guilty plea had been entered. Therefore, this statement could not have influenced Mr. Jaco's decision to plead guilty and did not vitiate the knowing and voluntary nature of his plea.

Finally, were we to adopt Mr. Jaco's argument that a guilty plea of a sex offender will be constitutionally deficient unless the offender is informed of the mandatory psychological evaluation and certification that is required before release on parole is appropriate, then guilty pleas to other felony offenses are arguably invalid as well unless the offender is advised of all the criteria that will affect the offender's release on parole. We decline to adopt such a rule.

### Conclusion

For the foregoing reasons, we conclude that Mr. Jaco's guilty plea met the constitutionally required standard of knowing and voluntary. Actual release is a decision left to the parole board. Mr. Jaco was correctly informed of his release eligibility date. Neither the federal nor the state constitution requires that he be informed of all possible factors that could affect the parole board's decision. Mr. Jaco understood the constitutional rights he waived in order to accept two consecutive six-year sentences rather than face trial on two rape charges. Due Process is not offended by such an agreement. It appearing that the petitioner is indigent, costs of this appeal are assessed against the State of Tennessee.

_____
FRANK F. DROWOTA, III, CHIEF JUSTICE