IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
Assigned on Briefs April 21, 2011

## JABARI ISSA MANDELA A/K/A JOHN H. WOODEN
v.
## TENNESSEE DEPARTMENT OF CORRECTION

**An Appeal from the Chancery Court for Davidson County**
**No. 09-743-II     Carol L. McCoy, Chancellor**

_____

**No. M2010-00829-COA-R3-CV - Filed July 29, 2011**

_____

This is a petition for declaratory judgment filed by an inmate seeking review of the calculation of his prison sentence. The petitioner inmate filed two administrative petitions for a declaratory order challenging the calculation of his sentence, and the respondent Tennessee Department of Correction ("TDOC") denied both petitions. Thereafter, the petitioner filed the instant petition for declaratory judgment, arguing that his sentence was improperly calculated. The parties filed cross-motions for summary judgment. The trial court granted summary judgment in favor of TDOC. The petitioner now appeals. We affirm.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, P.J., W.S., and J. STEVEN STAFFORD, J., joined.

Jabari Issa Mandela a/k/a John H. Wooden, Petitioner/Appellant, *Pro Se*

Robert E. Cooper, Jr., Attorney General and Reporter, and Kellena Baker, Assistant Attorney General, for the Respondent/Appellee Tennessee Department of Correction

**OPINION**

**FACTS AND PROCEEDINGS BELOW**

Petitioner/Appellant Jabari Issa Mandela a/k/a John H. Wooden ("Petitioner") is an inmate in the custody of Respondent/Appellee TDOC. On June 23, 1982, Petitioner was convicted on four counts of a ten-count indictment. He was sentenced as follows:   Count 1 – second

degree burglary, 6 to 15 years imprisonment (indeterminate); Count 2 – aggravated rape (a Class X offense), life imprisonment; Count 4 – aggravated assault, 3 to 9 years imprisonment (indeterminate); and Count 10 – aggravated sexual battery (a Class X offense), 35 years imprisonment.[1] The criminal court ordered all counts to be served consecutively. The convictions were affirmed on appeal. *See State v. Wooden*, 658 S.W.2d 553 (Tenn. Crim. App. 1983).

When Petitioner was sentenced, he was sentenced under the Class X Felony Act of 1979 for his convictions on Counts 2 and 10. T.C.A. § 39-1-701, *et seq.* (repealed); *see Davis v. Campbell*, 48 S.W.3d 741, 746 (Tenn. Ct. App. 2001). Under that Act, a Class X sentence could not be reduced by good behavior or work incentive credit; in fact, it could not be reduced by any sentence credit of any sort. T.C.A. § 39-1-703(2) (repealed), *cited in Jordan v. Campbell*, No. M1999-00540-COA-R3-CV, 1999 WL 1015581, at *1 (Tenn. Ct. App. Nov. 10, 1999). In 1983, the laws were amended to allow certain Class X prisoners to earn "prisoner performance sentence credits," or PPSC. PPSCs would reduce a prisoner's sentence expiration date, but not his parole eligibility date. *See Taylor v. Campbell*, No. M2001-00479-COA-R3-CV, 2003 WL 22248231, at *4 (Tenn. Ct. App. Oct. 1, 2003); T.C.A. § 41-21-230 (repealed).

In 1985, the laws were again amended. The 1985 amendment established a new system that permitted Class X offenders to earn "prisoner sentence reduction credits," or PSRCs.[2] The PRSCs could reduce prisoners' sentence expiration dates as well as their parole eligibility dates. *Taylor*, 2003 WL 22248231, at *4; *see* T.C.A. § 41-21-236 (2010).

Under the 1985 Act, a person convicted of a Class X crime prior to December 11, 1985 could become eligible for PRSCs under the new statute. To become eligible, the convicted person was required to sign a written waiver, waiving his right to serve his sentence under the law that was in effect when the crime was committed and agreeing to serve his sentence under

---

[1]The convictions on Count 2 and Count 10 were considered to be "Class X" felonies under the Class X Felonies Act of 1979. T.C.A. § 39-1-701, *et seq.* (repealed). Although that Act has since been repealed, the "Class X" felony classification remains effective for the Petitioner's sentence in this case. *See Depriest v. State*, No. W2003-02561-CCA-R3-HC, 2004 WL 1872897, at *2 (Tenn. Crim. App. Aug. 20, 2004).

[2]The 1985 amendment was included in the Tennessee Comprehensive Correction Improvement Act of 1985.

the new law. T.C.A. § 41-21-236(c)(3).[3] The credits could then be awarded "from and after the date a person becomes eligible under this subsection (c)." *Id.*

Once the 1985 law went into effect, Petitioner in the instant case sent written inquiries to TDOC officials, asking them whether signing the statutory waiver would be beneficial to him. It appears that there was no clear answer to that question. At some point, Petitioner was advised that it would be advantageous for him to sign the waiver to become eligible for the sentence credits for his Class X offenses. Nevertheless, for a period of time, he refused to sign the waiver. Eventually, on April 27, 2005, Petitioner signed the statutory waiver; this made him eligible to earn credits toward his Class X sentences under the 1985 law. TDOC made Petitioner's waiver retroactive to January 10, 1989, based on TDOC's determination that this was the expiration date of Petitioner's sentence on Count 1, and that January 10, 1989 was the earliest date on which Petitioner could have benefitted from the new law. Petitioner disagreed. He thought that the waiver should have been effective as of April 1, 1986, the date on which he claimed the 1985 Act became effective.[4]

In July 2005, Petitioner filed a petition with TDOC for a declaratory order, seeking a contested case hearing on "the issue of whether the sentence management system staff improperly calculated his initial sentence by not certifying his sentence for custodial parole, not continuing to hold his sentences in abeyance as required under prior law and not back dating his waiver [under Section 41-21-236(c)(3)] to begin in April 1986." TDOC denied this petition. It explained to Petitioner that "custodial parole did not apply to indeterminate sentences in a consecutive string." It further told him that "it would have been detrimental to [Petitioner] if you had signed a waiver on your determinate sentences. Indeterminate

---

[3]That subsection provides:

> (3) Any person who committed a felony, including any Class X felony, prior to December 11, 1985, may become eligible for the sentence reduction credits authorized by this section by signing a waiver, in writing, of the right to serve the sentence under the law in effect at the time the crime was committed. However, sentence reduction credits authorized by this section may be awarded only for conduct or performance from and after the date a person becomes eligible under this subsection (c).

T.C.A. § 41-21-236(c)(3).

[4]The historical notes to the 1985 Act indicate that the statute became effective on December 11, 1985, for the purpose of establishing rules, regulations, and criteria for the awarding, deprivation, removal, and administration of prisoner sentence reduction credits. However, for purposes of actually beginning such prisoner sentence reduction credit program and awarding sentence reduction credits thereunder, this section took effect on March 1, 1986. *See* T.C.A. § 41-21-236 (1985) (historical notes).

sentences have built in good conduct and the signing of a waiver would have extended your [sentence] Expiration Date (EXP)."[5]

In November 2006, Petitioner filed another petition with TDOC for declaratory relief. Petitioner again requested a contested case hearing. The purpose of this contested case hearing was "to determine whether the agency's calculation of his first [sentence] . . . and his string of 'mixed' consecutive sentences . . . had not been correctly calculated, which resulted in each of his sentences being lengthened by not certifying his parole eligibility for each consecutive sentence, a violation of the Ex Post Facto Clause of the State and Federal Constitution and other statutory provisions." TDOC denied Petitioner's November 2006 request, stating that there were no *ex post facto* issues, and that the claim in his petition was essentially the same as the claim in Petitioner's July 2005 petition for administrative declaratory relief.[6]

On April 15, 2009, Petitioner filed the instant petition for declaratory judgment pursuant to Tennessee Code Annotated § 4-5-225 of the Tennessee Administrative Procedures Act. He claimed that his petition was filed to "challenge the legal validity of [TDOC's] declaratory order refusing to grant a contested case hearing regarding the question of whether [TDOC] failed to correctly calculate his string of consecutive sentences under the State sentence laws at the time the crimes were committed, deferring his parole eligibility date(s) on each sentence without due process of law, requiring him to completely serve the initial sentence without parole board's consideration to determine the commencement of his second consecutive sentence." Petitioner summarized his claim in paragraph 20 of his petition:

> [TDOC] calculated [P]etitioner's initial sentence of six to fifteen (6 - 15) year term as if it was without the possibility of parole, by not certifying him eligible for custodial parole after he serve[d] the amount of time to reach parole eligibility, which resulted in an increase of each of his individual sentences, and additionally by not certifying him eligible for retroactive custodial parole after he reach[ed] eligibility on each subsequent individual sentence.

He requested a declaratory judgment that TDOC erred in calculating his parole eligibility for each of his sentences in accordance with the laws that existed at the time of the crimes. He

---

[5]Neither this administrative petition nor TDOC's denial of the petition is included in the appellate record, but both are referred to in the pleadings and filings with the trial court below.

[6]As with the July 2005 petition, neither the administrative petition nor TDOC's denial of the petition is included in the appellate record, but both are referred to in the pleadings and filings with the trial court below.

also asserted that TDOC erred by not awarding him sentence credits retroactive to April 1986.

On September 14, 2009, TDOC filed a motion for summary judgment. In the motion, TDOC argued that the facts were undisputed, that it had properly calculated Petitioner's release eligibility date for each of his consecutive sentences, and that Petitioner's overall release eligibility date had been determined properly in accordance with Tennessee Code Annotated § 40-35-501(l).[7] In addition, TDOC argued that Petitioner did "not have any sentence that [made] him eligible for parole," because custodial parole applies only to cases involving consecutive determinate sentences.[8] *See Howell v. State*, 569 S.W.2d 428, 430 n.1 (Tenn. 1978). Because Petitioner did not receive a determinate sentence for a non-Class X offense, TDOC argued, he was not eligible for custodial parole.

In support of its motion for summary judgment, TDOC submitted the affidavit of its Director of Sentence Management Services, Candace Whisman ("Whisman"), along with attached documents. In her affidavit, Whisman explained in detail TDOC's calculation of the release eligibility date ("RED") for all of the Petitioner's sentences. She stated that Petitioner "received sentences in accordance with the sentence laws that existed at the time the crimes were committed and all sentences are calculated accordingly." In her calculations, Whisman credited Petitioner with the maximum number of good conduct credits ("GCC") that could potentially have been earned throughout the sentence, despite the fact that Petitioner did not actually earn those credits in advance. She asserted that Petitioner was "not eligible for custodial parole consideration on any of his sentences," because "he did not receive any determinate sentences." Whisman's affidavit included a graphic illustration of how she calculated Petitioner's sentence:

Count 1
Sentence imposed date for count 1 (6 to 15 years)          6-23-1982
minus pretrial jail credit                                 -  159 days

_____

[7]That subsection provides:

> (l) The release eligibility date provided for in this section is separately calculated for each offense for which a defendant is convicted. For consecutive sentences, the periods of ineligibility for release are calculated for each sentence and are added together to determine the release eligibility date for the consecutive sentences.

T.C.A. § 40-35-501(l) (2010).

[8]A determinate sentence is a specific sentence with no minium or maximum. All others, except for life sentences, are indeterminate. *Howell v. State*, 569 S.W.2d 428, 430 n.1 (Tenn. 1978).

| | |
|---|---|
| Equals sentence effective date | 1-15-1982 |
| Plus 6 years (minimum sentence on count 1) | + 6 years |
| Equals | 1-15-1988 |
| minus GCC- count 1 | -2 yrs 4 mos |
| Equals Regular Parole (RP) date | 9-15-1985 |
| minus 6 months for Probationary Parole (PP) date | - 6 months |
| Equals Probationary Parole (PP) date | 3-15-1985 |
| minus 704 days PPSC- count 1 | - 704 days |
| Equals final Probationary Parole (PP) date | 4-12-1983 |

Count 2

| | |
|---|---|
| Plus 30 years on life sent.- count 2 (Class X) | + 30 yrs |
| Equals Release Eligibility Date (RED) | 4-12-2013 |
| minus 2,004 PSRC- count 2 | - 2,004 days |
| Equals final Release Eligibility Date (RED) | 10-17-2007 |

Count 4

| | |
|---|---|
| Plus 3 years (minimum sentence on count 4) | + 3 yrs. |
| Equals | 10-17-2010 |
| minus GCC- count 4 | - 1 yr 1 mo. |
| Equals Regular Parole (RP) date | 9-17-2009 |
| minus 6 months for Probationary Parole (PP) date | - 6 months |
| Equals Probationary Parole (PP) date | 3-17-2009 |
| minus 129 PPSC- count 4 | - 129 days |
| Equals final Probationary Parole (PP) date | 11-11-2008 |

Count 10

| | |
|---|---|
| Plus 35% of 35 yrs- count 10 | +12 yr. 3 mos. |
| Equals Release Eligibility Date (RED) | 2-11-2021 |
| minus PSRC- Class X count 10 | - 36 days |
| Equals current overall Release Eligibility Date (RED) | 1-5-2021 |

On October 30, 2009, Petitioner filed a reply to TDOC's summary judgment motion, and he also filed a cross-motion for summary judgment. In Petitioner's reply/motion, he argued that TDOC's "combining the minimal of his mixed string of consecutive sentences to determine the eligibility date for his parole hearing without specific authorization by a state statute, is illegal." He contended that "the subsequent refusal to certify him eligible for custodial parole hearing as he reach[es] eligibility on each of his separate sentences violated state law." In support of his motion for summary judgment, Petitioner filed his own affidavit. Petitioner's affidavit included, among other things, a sentence credit chart that set out the number of

credits he believed should have been credited to him each month from 1982 through August 2009. According to Petitioner, Whisman's calculations omitted 856 prison credits to which he is entitled. Petitioner claimed that his indeterminate sentence for Count 1 should have ended in 1983 rather than on January 10, 1989, and that, therefore, it would have benefitted him for his signed waiver to have been made retroactive to April 1, 1986.

On December 3, 2009, TDOC filed its response to Petitioner's motion for summary judgment. In addition to its other arguments, TDOC argued that Petitioner did not exhaust his administrative remedies in that he failed to seek a declaratory order from TDOC regarding the issues presented. For this reason, TDOC claimed, Petitioner's summary judgment motion should be denied and his lawsuit should be dismissed. TDOC also argued that Petitioner's complaint should be dismissed based on the doctrine of *res judicata*, because Petitioner admitted his previous litigation on whether his sentence was properly calculated.

On March 8, 2010, the trial court entered an order granting summary judgment in favor of TDOC. The trial court first recognized that Petitioner had filed at least three chancery court cases on the subject matter of his sentence calculation, commenting that "the court of appeals may have already addressed the arguments that the Petitioner makes in the present case." The trial court opined that, "[i]f so, this case is subject to dismissal under the doctrine of *res judicata*." The trial court then held that TDOC was entitled to summary judgment on Petitioner's claim that his sentence was improperly calculated because Whisman's affidavit demonstrated that TDOC's calculation of his release eligibility date accurately accounted for all of the sentencing credits due to Petitioner. The trial court also held that TDOC properly refused to treat Petitioner's waiver as effective retroactively to April 1986, because Petitioner did not sign the waiver until April 27, 2005, and the statute permitting the waiver made it effective prospectively from the date the waiver was signed. T.C.A. § 41-21-236(c)(3). Finally, the trial court rejected Petitioner's claim that TDOC erred by not certifying him as eligible for custodial parole on his first sentence, because his sentences were not eligible for custodial parole. From this order, Petitioner now appeals.

### ISSUES ON APPEAL AND STANDARD OF REVIEW

On appeal, Petitioner states in his brief the following issues for our review:[9]

---

[9]As sometimes happens in cases involving the review of the calculation of an inmate's sentence, "[a]scertaining the basis for [the Petitioner's] disagreement with the Department's calculations is difficult." ***Washington v. TDOC***, No. M2002-02651-COA-R3-CV, 2005 WL 309359, at *3 (Tenn. Ct. App. Feb. 8, 2005). In our analysis, we attempt to address all of the arguments fairly made by Petitioner in his appellate brief.

1.  Whether the trial court erred in finding that the claim presented in the petition for declaratory judgment was barred under the doctrine of *res judicata*?

2.  Whether the trial court erred in declaring that TDOC correctly calculated Petitioner's consecutive sentences:

> a.  by concluding that Petitioner's parole eligibility and release eligibility for each of his consecutive sentences may be added together to form one parole eligibility date,
>
> b.  by employing arbitrary procedures which deprived him of the right to sign the waiver to earn sentence credits to reduce his Class X sentences which otherwise his sentences would not be reduced, and
>
> c.  by not accurately tabulating the correct amount of sentence credits he earned each month?

The trial court's grant of summary judgment in favor of TDOC must be reviewed *de novo* on the record, with no presumption of correctness in the trial court's decision. ***Brady v. TDOC***, No. M2009-02387-COA-R3-CV, 2010 WL 2670825, at *2 (Tenn. Ct. App. July 2, 2010). Upon review we "must make a fresh determination that the requirements of Tenn. R. Civ. P. 56 have been satisfied." ***Mathews Partners, LLC v. Lemme***, No. M2008-01036-COA-R3-CV, 2009 WL 3172134, at *3 (Tenn. Ct. App. Oct. 2, 2009) (citing ***Hunter v. Brown***, 955 S.W.2d 49, 50-51 (Tenn. 1977)). Summary judgment should be rendered only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Tenn. R. Civ. P. 56.04.

## ANALYSIS

### *Exhaustion of Remedies*

It is well settled that an inmate may seek judicial review of TDOC's calculation of his prison sentence, including reduction credits, pursuant to the Tennessee Administrative Procedures Act, Tennessee Code Annotated § 4-5-101, *et seq*. Section 4-5-225(a) provides that a declaratory judgment may be sought on "[t]he legal validity or applicability of a statute, rule or order of an agency to specified circumstances . . . ." T.C.A. § 4-5-225(a). Such relief is available only if "the complainant has petitioned the agency for a declaratory order and the agency has refused to issue a declaratory order," *i.e.*, the inmate has first requested a

declaratory order from TDOC, and TDOC denied the requested relief.[10] T.C.A. § 4-5-225(b); *see Bonner v. TDOC*, 84 S.W.3d 576, 583 (Tenn. Ct. App. 2001). "Absent evidence that such an order was sought, the petition must be dismissed for lack of subject matter jurisdiction." *Bonner*, 84 S.W.3d at 583; *see Stewart v. Ray*, No. M2010–01808–COA–R3–CV, 2011 WL 1938280, at *3 (Tenn. Ct. App. May 19, 2011).

In the instant case, the petition states that Petitioner filed petitions for declaratory judgment with TDOC in July 2005 and November 2006, that both petitions raised the issues in this lawsuit, and that TDOC denied both petitions.[11] On this basis, we find that Petitioner exhausted his administrative remedies, and that the instant petition for declaratory judgment was properly before the trial court.

### *Res Judicata*

Petitioner asserts on appeal that the trial court erred in determining that his petition was barred under the doctrine of *res judicata*. He argues that *res judicata* is inapplicable because his previously filed lawsuits, mentioned by the trial court, did not involve the same issues presented in the case at bar. In addition, he claims that two of the three lawsuits cited by the trial court were dismissed for lack of subject matter jurisdiction. Because those lawsuits were not an adjudication on the merits, he argues, they are not a bar to subsequent claims on the same subject matter.

Instead of disputing Petitioner's argument on *res judicata*, TDOC asserts that *res judicata* was not the basis for the trial court's decision. Although the trial court discussed *res judicata*, TDOC contends, it then went on to address the merits of Petitioner's petition. Therefore, TDOC claims, Petitioner's *res judicata* argument is not a basis for reversal.

It is undisputed that Petitioner has filed at least three lawsuits in chancery court challenging the calculation of his 1982 prison sentence.[12] *See Mandela v. Reynolds*, No.

---

[10]Neither the statute nor the cases specify the exact form for such a request for a declaratory order from the agency. This Court has held that "any written request which makes the agency aware of the substance of the controversy and asks the agency to act in accordance with a suggested course of action is sufficient." *Stewart v. Ray*, No. M2010–01808–COA–R3–CV, 2011 WL 1938280, at *3 (Tenn. Ct. App. May 19, 2011).

[11]A petitioner has ten years from the date of the agency's denial of his administrative petition to bring a petition for declaratory judgment under Section 4-5-225. *Hughley v. State*, 208 S.W.3d 388, 395 (Tenn. 2006).

[12]Petitioner is no stranger to litigation. In a prior appeal, this Court described him as "somewhat of a
(continued...)

01-A-01-9303-CH00126, 1993 WL 236607 (Tenn. Ct. App. June 30, 1993); ***Johnson v. McWherter***, No. 01-A-019203-CH-00103, 1992 WL 156102 (Tenn. Ct. App. July 8, 1992); ***Mandela v. Reynolds***, 1990 WL 192731 (Tenn. Ct. App. Dec. 5, 1990). Although it appears that many of the issues raised in the instant case were also raised in Petitioner's previous lawsuits, it is unclear whether any of those issues were decided on the merits in the prior litigation. In fact, Petitioner correctly notes that two of the lawsuits were dismissed based on lack of subject matter jurisdiction, and a third one was dismissed based on the *res judicata* effect of the holding in one of the first lawsuits. Therefore, it is questionable whether Petitioner's prior lawsuits were decided on the merits, and consequently whether they would have any preclusive effect. ***See Lee v. Hall***, 790 S.W.2d 293, 294 (Tenn. Ct. App. 1990).

Regardless, we agree with TDOC that the trial court's decision was not based on *res judicata*. Although *res judicata* was discussed, the trial court in fact went on to address the merits of Petitioner's petition for declaratory judgment. For this reason, we find that Petitioner's *res judicata* argument is not a basis for reversal of the trial court's decision.

### *Calculation of Sentence*

Petitioner next argues that the trial court erred in concluding that TDOC correctly calculated the release eligibility date for each of his consecutive sentences. Petitioner claims that TDOC inappropriately sentenced him in accordance with Section 40-35-501(l), because that statute was not yet in effect in 1982 when the underlying crimes were committed. This, he claims, violated the *ex post facto* provisions of both the state and federal constitutions. Petitioner also makes the same argument that he made in the administrative proceedings regarding his sentencing credit waiver, *i.e.*, he claims that the trial court erred in refusing to treat his waiver as though it were effective on April 1, 2006. Finally, Petitioner argues that the trial court erred in holding that he was not eligible for parole on any of his sentences. He states that there was "an actual increase in punishment by TDOC requiring the appellant to complete his first sentence without parole consideration."

---

[12](...continued)
litigation mill during his two [now three] decades behind bars." ***Mandela v. Campbell***, No. M1998-00208-COA-R3-CV, 2003 WL 727320, at *1 (Tenn. Ct. App. Mar. 4, 2003). In 1983, Petitioner was approved as an inmate legal helper, and in that capacity he filed numerous cases against various prison authorities and others. ***Mandela v. Campbell***, No. M2001-01956- COA-R3-CV, 2003 WL 174788, at *1 (Tenn. Ct. App. Jan. 28, 2003). In 2000, the federal District Court for the Western District of Tennessee enjoined Petitioner from representing himself in any more *in forma pauperis* petitions, because he had previously filed five frivolous lawsuits, and also enjoined him from filing pleadings on behalf of other inmates in that court. Subsequently, as a result of that decision, Petitioner's warden rescinded approval for him to act as an inmate legal helper. ***See id.***

A petitioner seeking to establish an *ex post facto* claim with respect to his sentence must show that a change in the law has adversely affected the petitioner's release date. This Court has recognized that, in order "to prevail with an *ex post facto* claim, a prisoner must show more than a speculative or attenuated possibility that the new statute, rule, or policy may result in more time in prison." *Utley v. TDOC*, 118 S.W.3d 705, 717 (Tenn. Ct. App. 2003). Rather, he must show that "the retroactive application of the new statute, rule, or policy either will result in a longer period of incarceration or creates a significant risk of increasing the period of his or her incarceration." *Id.*

In this case, TDOC applied Section 40-35-501(l) in calculating Petitioner's sentence. That statute provides specifically that an inmate's release eligibility date must be "separately calculated for each offense for which a defendant is convicted." T.C.A. § 40-35-501(l). The statute further provides that, when a defendant receives consecutive sentences, "the periods of ineligibility for release are calculated for each sentence and are added together to determine the release eligibility date for the consecutive sentences." *Id.*

In our view, the statute is not a change from the manner in which consecutive sentences were calculated under prior law. In this context, the term "consecutive" means "that the first sentence is to be completed before the second sentence begins, and so on in succession until all sentences have been consecutively served." *Mandela*, 1993 WL 236607, at *1. "The theory of consecutive or cumulative sentencing is that where a criminal defendant has been convicted of two or more offenses, his malefactions may merit separate and cumulative penalties." *Howell*, 569 S.W.2d at 432-33.

Petitioner does not explain how his consecutive sentences would have been calculated differently under preexisting laws. He simply argues that his rights were violated because the statute applied by TDOC became effective after his underlying crime was committed. In Attorney General Opinion 82-345, 1982 WL 177541 (July 2, 1982), issued just after Petitioner was sentenced, Tennessee's Attorney General opines that, under the law in effect at the time, the "aggregation of consecutive indeterminate sentences is proper." Petitioner points us to no contrary authority, and we have found none. Consequently, we must conclude that Petitioner has not carried his burden of proving an *ex post facto* violation.

Next, Petitioner claims that the trial court erred in failing to require TDOC to make his Section 41-21-236(c)(3) waiver retroactive to April 1, 1986. He claims that TDOC officials erroneously determined that his first sentence expired and his life sentence began in January 1989. Based on this misinformation, Petitioner argues, prison officials were confused and erroneously informed him about his rights under the waiver, and that this false information led him to delay signing the waiver until 2005. Because he was initially not fully informed

of his right to participate in the program from the beginning, Petitioner argues, the waiver that he signed should have been made effective as of April 1, 1986.

The trial court rejected this argument based on the plain language of the applicable statute, which provides that the "sentence reduction credits authorized by this section may be awarded only for conduct or performance *from and after the date a person becomes eligible* under this subsection (c)." T.C.A. § 41-21-236(c)(3) (emphasis added). Thus, a person "becomes eligible" only after the waiver is *actually* signed. Therefore, the trial court held, TDOC did not act improperly in refusing to make the effective date of the waiver retroactive to April 1, 1986.

Petitioner admits that he did not sign the waiver until April 27, 2005, despite having been advised previously that it would been beneficial for him to do so. Even so, TDOC made the waiver retroactive to January 10, 1989, the date of the expiration of Count 1, effectively giving Petitioner the maximum benefit under the waiver.[13] We agree with the reasoning of the trial court. Because the statute specifically makes the effect of the waiver prospective from the time the waiver is signed, TDOC was under no obligation to make it retroactive to April 1, 1986.[14]

Finally, Petitioner argues that TDOC was required to certify him as eligible for custodial parole on his first sentence. In his petition for declaratory judgment, Petitioner claimed that TDOC "calculated petitioner's initial sentence . . . as if it was without the possibility of parole, by not certifying him eligible for custodial parole after he serve[d] the amount of time to reach parole eligibility . . . ." It is difficult to discern from Petitioner's argument the basis on which he claims he was entitled to a custodial parole hearing, or when he believed he had "reach[ed] parole eligibility."[15] Relying on the reasoning in Attorney General Opinion 82-345, the trial court held that "the Board of Paroles is not required to consider inmates having

---

[13]The record does not reflect TDOC's reason for making Petitioner's waiver retroactive, rather than making it effective from the time the waiver was signed.

[14]In any event, if TDOC's calculation of Petitioner's sentence were correct, it appears that Petitioner received the maximum benefit under the waiver, and that it may have been detrimental to him to make the waiver retroactive to April 1, 1986.

[15]The Supreme Court has explained that "parole" is "nothing more than a conditional suspension of a sentence." *Howell*, 569 S.W.2d at 432. An inmate who is "granted custodial parole is not released in the community at that time but is afforded the opportunity to begin serving his consecutive sentence at an earlier date." A.G.O. 98-089, 1998 WL 227249 (Apr. 15, 1998). Thus, as we discern his argument, Petitioner claims that he should have been granted a custodial parole hearing and that, from this, he may have been able to begin his consecutive sentences on an earlier date. At no time was Petitioner entitled to be released into the community before the release eligibility date of his final sentence.

-12-

consecutive indeterminate sentences for 'custodial parole.'" Because Petitioner was serving consecutive sentences for two indeterminate sentences and two Class X sentences, the trial court held, he was not eligible for custodial parole.

Whisman's affidavit reflects that TDOC calculated Petitioner's sentence based on the minimum sentence of 6 years on Count 1, and that it calculated Petitioner's parole eligibility date for this sentence after accounting for all possible sentencing credits. Each of Petitioner's consecutive sentences began to run on the probationary parole dates or release eligibility dates of the previous sentence. Petitioner cites no authority for his argument that he was entitled to a custodial parole hearing to obtain an earlier parole date. Attorney General Opinion 82-345, relied upon by the trial court, states that "[t]he Board of Paroles is not required to consider inmates serving consecutive indeterminate sentences for 'custodial parole.'" Atty. Gen. Op. 82-345, at *1. We agree with this statement in the context of this case, because Petitioner's sentence was calculated on the basis of the minimum of his indeterminate sentences. For indeterminate sentences, "no prisoner shall be released until he has served [the] minimum [of an indeterminate] sentence nor until he shall have served one (1) year." T.C.A. § 40-28-115(a) (formerly § 40-3612). Only after such an inmate has served his minimum sentence may he be "subject to the jurisdiction of the [B]oard of Paroles." *Id.* Therefore, we find no basis for Petitioner's assertion that he was entitled to a custodial parole hearing.

## CONCLUSION

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellant Jabari Issa Mandela a/k/a John H. Wooden, and his cash bond as surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE