# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### Assigned on Briefs July 21, 2004

## JAMES C. MURRAY v. STATE OF TENNESSEE

**Direct Appeal from the Criminal Court for Davidson County**
**No. 94-C-1532     Seth Norman, Judge**

---

**No. M2003-01239-CCA-R3-PC - Filed August 17, 2004**

---

The petitioner, James C. Murray, appeals the denial of post-conviction relief relating to his convictions for premeditated first degree murder and conspiracy to commit first degree murder. On appeal, the petitioner contends: (1) he received ineffective assistance of counsel at trial; and (2) the post-conviction court erred in refusing to admit Leonard Rowe's testimony. We affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

JOE G. RILEY, SP. J., delivered the opinion of the court, in which JOSEPH M. TIPTON and ROBERT W. WEDEMEYER, JJ., joined.

C. LeAnn Smith, Nashville, Tennessee, for the appellant, James C. Murray.

Paul G. Summers, Attorney General and Reporter; J. Ross Dyer, Assistant Attorney General; Victor S. Johnson, III, District Attorney General; Thomas B. Thurman, Deputy District Attorney General; and Roger D. Moore, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

The petitioner was convicted of premeditated first degree murder and conspiracy to commit first degree murder for his role in the death of Don Hurt on December 19, 1991. The petitioner received consecutive sentences of life imprisonment and twenty-two years. On appeal, a panel of this court affirmed the petitioner's convictions and sentences. *See* State v. James Murray, Marcie Murray, and Sharon R. Hurt, C.C.A. No. 01C01-9702-CR-00066, 1998 Tenn. Crim. App. LEXIS 1323 (Tenn. Crim. App. Dec. 30, 1998), *perm. to app. denied* (Tenn. 1999).

The following factual background is derived from this court's opinion on direct appeal. *See id.* at **3-17. The petitioner along with his wife and sister-in-law, co-defendants Marcie Murray and Sharon Hurt, arranged to kill the victim, Sharon Hurt's husband. On June 11, 1991, the petitioner and his wife, Marcie Murray, shot the victim during a drive-by shooting. The victim's wounds were not fatal. On December 19, 1991, the petitioner and the co-defendants placed Elavil and Benadryl into the victim's mixed drinks. The consumption of the drinks caused the victim to

lose consciousness. While the victim remained unconscious, the petitioner and his wife each shot the victim in the head, fatally wounding him.

## I. POST-CONVICTION RELIEF HEARING

At the post-conviction relief hearing, trial counsel testified the petitioner requested that he locate numerous witnesses, including Pam Woolums. Trial counsel recalled he traveled to Kentucky and interviewed Woolums, who maintained she, the petitioner, and Marcie Murray were in Gatlinburg when the victim was killed. Trial counsel stated Woolums seemed "more than willing" to testify, and he presented Woolums with a subpoena. However, Woolums did not appear to testify at trial. During trial, trial counsel discovered the Murray family had taken out warrants against Woolums. Because Woolums failed to appear at trial, the trial court issued a missing witness instruction to the jury.

Trial counsel testified the state theorized that "mickey's" were slipped into the victim's drink, and Benadryl was detected in the victim's system. Trial counsel stated he was aware of an issue regarding the availability of a clear, tasteless form of Benadryl at the time of the murder. Trial counsel did not obtain independent verification of its availability and did not contact the manufacturer. He explained he did not believe the form of Benadryl was relevant to either the state's case or the defense.

Trial counsel testified issues regarding the agreement between Leonard Rowe, who testified for the state at trial, and the prosecution were presented during the hearing on the motion for new trial. Trial counsel recalled that when the defense attempted to present Rowe's testimony at the hearing, Rowe exercised his Fifth Amendment right against self-incrimination and refused to testify.

The petitioner testified Pam Woolums, his wife's half-sister, was an alibi witness who did not appear for trial, even though trial counsel presented her with a subpoena. The petitioner stated he believed Woolums' failure to appear and the missing witness instruction resulted in prejudice. The petitioner further stated he was unaware that the prosecution possessed a tape-recorded statement from Woolums. The petitioner maintained his family did not take out warrants against Woolums.

The petitioner testified that during trial, he was unaware that Benadryl was unavailable in a clear, tasteless form at the time of the offenses. He stated he relied upon trial counsel to investigate the issue. The petitioner explained that if the Benadryl had been given to the victim in capsule form, the medical examiner would have discovered capsule residue in the victim's system when performing the autopsy. The petitioner claimed Dr. Harlan did not discover any capsule residue. Although the petitioner claimed the doctor testified regarding the possibility of the use of a liquid form of Benadryl, a liquid form was not available until 1994.

Dr. Charles Harlan, who performed the autopsy on the victim, recalled he testified at trial regarding the level of Benadryl discovered in the victim's blood. Dr. Harlan stated that although he indicated at trial that a clear, tasteless liquid form of Benadryl was available when the victim was killed in 1991, he did not realize that Benadryl may have been unavailable in this form at the time of the victim's death. The doctor further stated that when conducting the autopsy, he was unaware

of the possibility that the victim had been drugged. Dr. Harlan testified the cause of the victim's death was not drug induced; rather, the victim died as the result of gunshot wounds to the head.

Dr. Harlan recalled that when performing the autopsy, he discovered a substance inside the victim's stomach, but he was unaware of whether the substance included Benadryl. The doctor testified that if a person consumes the capsule form of Benadryl, the capsule residue may remain in the person's system shortly after consumption. However, the capsule material is made of gelatin, which dissolves rapidly. Dr. Harlan stated that if the powder contents of a gelatin capsule were poured into a person's drink, the powder would not be detectable inside the person's stomach.

Charles Ray, co-defendant Marcie Murray's trial counsel, stated Woolums' testimony would have placed the Murrays at a different location when the victim was killed. Ray opined that Woolums would not have been an effective witness for the defense. Ray explained that Woolums had a drug problem, which would have been evident to the jury. He stated that in order to avoid a missing witness instruction, he would have placed Woolums on the stand, if she had appeared for trial. Ray was unaware that the prosecution had interviewed Woolums and obtained a tape-recorded statement.

Ray testified Rowe and co-defendant Hurt had an "on again off again" romantic relationship which became "on again" after Rowe was sentenced for his role in the offenses. Hurt informed her trial counsel that Rowe had knowledge regarding the withholding of evidence and threats by the state. Rowe further alleged the prosecutor had coached him prior to testifying at trial. Ray stated he deposed Rowe, who made allegations which, if true, would have given rise to a claim of prosecutorial misconduct. During the hearing on the motion for new trial, the defense addressed an issue regarding Rowe's allegations. However, during the hearing, Rowe exercised his Fifth Amendment right and refused to testify.

## II. POST-CONVICTION COURT'S FINDINGS

In its written order denying relief, the post-conviction court found the petitioner did not establish that trial counsel was ineffective in failing to secure Woolums' presence at trial. The court noted trial counsel testified Woolums had active warrants issued against her, and Ray testified he believed Woolums' effectiveness as a witness would have been questionable due to her drug problem. The court further noted Woolums did not testify at the post-conviction relief hearing.

The post-conviction court found the petitioner did not establish that trial counsel was ineffective in failing to raise as a defense at trial the unavailability of a colorless, tasteless form of Benadryl at the time of the victim's death. The court noted that although the prosecution referred in its opening statements to the use of a "mickey," the prosecution offered no proof regarding the specific method employed in drugging the victim. The court further noted Dr. Harlan testified at the hearing that although high levels of Benadryl were present in the victim's blood, the evidence did not indicate that the victim ingested a specific form of Benadryl. The court found the results of any investigation would not have been relevant to the case and would not have benefitted the petitioner.

## III.  STANDARD OF REVIEW

The post-conviction judge's findings of fact on post-conviction hearings are conclusive on appeal unless the evidence preponderates otherwise.  State v. Burns, 6 S.W.3d 453, 461 (Tenn. 1999).  Those findings of fact are afforded the weight of a jury verdict, and this court is bound by the findings unless the evidence in the record preponderates against those findings.  Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003).  This court may not reweigh or reevaluate the evidence, nor substitute its inferences for those drawn by the post-conviction court.  State v. Honeycutt, 54 S.W.3d 762, 766 (Tenn. 2001).  However, the post-conviction court's conclusions of law are reviewed under a purely *de novo* standard with no presumption of correctness.  Fields v. State, 40 S.W.3d 450, 458 (Tenn. 2001).

## IV.  INEFFECTIVE ASSISTANCE OF COUNSEL

The petitioner contends he received ineffective assistance of counsel at trial.  Specifically, he maintains trial counsel was ineffective in failing to secure the presence of Pam Woolums at trial and in failing to investigate the forms of Benadryl available at the time of the victim's death.  The state disagrees with these assertions, as do we.[1]

When a claim of ineffective assistance of counsel is made, the burden is upon the complaining party to show (1) counsel's performance was deficient, and (2) the deficiency was prejudicial in terms of rendering a reasonable probability that the result of the trial was unreliable or the proceedings fundamentally unfair.  *See* Strickland v. Washington, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984); Carpenter v. State, 126 S.W.3d 879, 886 (Tenn. 2004).  In Baxter v. Rose, 523 S.W.2d 930, 936 (Tenn. 1975), our supreme court required that the services be rendered within the range of competence demanded of attorneys in criminal cases.  In reviewing counsel's conduct, we assess performance by eliminating the distorting effects of hindsight and evaluate the conduct from counsel's perspective at the time.  Wiggins v. Smith, 539 U.S. 510, 523, 123 S. Ct. 2527, 2536, 156 L. Ed. 2d 471 (2003); Nichols v. State, 90 S.W.3d 576, 587 (Tenn. 2002).

It is unnecessary for a court to address deficiency and prejudice in any particular order, or even to address both if the petitioner makes an insufficient showing on either.  Strickland, 466 U.S. at 697, 104 S. Ct. at 2069.  In order to establish prejudice, the petitioner must establish a "'reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.  A reasonable probability is a probability sufficient to undermine confidence in the outcome.'"  Burns, 6 S.W.3d at 463 (quoting Strickland, 466 U.S. at 694, 104 S. Ct. at 2068) (citations omitted).

---

[1]The state contends the appeal should be dismissed due to the petitioner's failure to file a timely notice of appeal.  *See* Tenn. R. App. P. 4(a).  However, the petitioner filed a motion to waive the timely filing of the notice of appeal, and this court granted the motion in the interest of justice.  The state further contends the petitioner failed to include a transcript of the post-conviction relief hearing in the appellate record.  However, a transcript of the proceedings was included in the appellate record of co-petitioner Marcie Murray, whose post-conviction relief petition was addressed during the same hearing.  We can take judicial notice of our records.  We have examined the transcript and will address the issues on their merits.

## A. Failure to Secure Woolums' Presence

The petitioner asserts trial counsel was ineffective in failing to secure the presence of Woolums, an alibi witness, at trial. The petitioner submits that had trial counsel secured Woolums' presence, he would have avoided a missing witness instruction. However, Woolums did not testify at the post-conviction relief hearing. Thus, the petitioner has not established that trial counsel's failure to present Woolums at trial resulted in prejudice. *See* Black v. State, 794 S.W.2d 752, 757 (Tenn. Crim. App. 1990).

Furthermore, trial counsel stated Woolums was willing to testify at trial, and he presented her with a subpoena. Woolums did not indicate that she would not appear for trial. Moreover, even if Woolums did testify, her credibility would have been questionable due to her drug problem. Accordingly, this argument is without merit.

## B. Failure to Investigate Available Forms of Benadryl

The petitioner asserts trial counsel was ineffective in failing to investigate and discover that Benadryl was not available in a tasteless, colorless form at the time of the victim's death. The petitioner submits trial counsel could have utilized this information in conducting a more effective cross-examination of Dr. Harlan.

However, as noted by the post-conviction court, the state did not present proof at trial regarding the form of Benadryl used. Furthermore, at the post-conviction relief hearing, Dr. Harlan testified he was unable to determine the form of Benadryl which the victim consumed. Although this evidence could have been used to impeach Dr. Harlan's testimony at trial, the proof presented at trial established that the victim died as the result of two gunshot wounds to the head. Thus, the petitioner has failed to demonstrate prejudice. *See* Marcie A. Murray v. State, No. M2002-03098-CCA-R3-PC, 2004 Tenn. Crim. App. LEXIS 141, at **11-12 (Tenn. Crim. App. Feb. 18, 2004) (holding that co-defendant Murray, whose petition was heard during the same hearing, failed to demonstrate prejudice relating to the same issue).

## V. LEONARD ROWE'S TESTIMONY

The petitioner maintains the post-conviction court erred in refusing to admit the testimony of Leonard Rowe, a co-defendant who pled guilty in exchange for testifying against the petitioner and the co-defendants, regarding statements he made after trial. At the post-conviction relief hearing, the petitioner sought to admit Rowe's testimony that after trial, he gave sworn statements representing that he testified falsely at trial and that the state pressured him to give certain testimony. The post-conviction court found this evidence had been sought at the hearing on the motion for new trial and declined to hear the issue as one which had been previously litigated.

According to this court's opinion on direct appeal, Rowe gave two sworn statements more than one year after the trial concluded. James Murray, *et al.*, 1998 Tenn. Crim. App. LEXIS 1323, at *63. Although Rowe gave these statements in the presence of a court reporter, the prosecution was not present in order to cross-examine Rowe. *Id.* at **63-64. As noted by this court,

[i]n the first statement, Rowe claimed that during the trial, he "was under a lot of pressure on the witness stand, threats, if [he] didn't convince the jury that [the defendants] were guilty, the D.A. was going to burn [his] ass." In addition, he said that the prosecutor promised him a letter of recommendation so that he would make parole at the earliest possible date. Rowe stated that he believed that this meant that he would only "do a little bit more jail time," although he admitted that there was never any discussion of how much time he would actually serve. Rowe also claimed that he was "tutored" by the prosecutor as to what to say at trial and the prosecutor "put words in [his] mouth." Rowe claimed that he did not tell the truth at trial, but he refused to specify what he had been untruthful about. Rowe also stated that he felt that the State had not lived up to its promises, but he refused to say why that was the case. In the second statement, Rowe reiterated these claims and stated that the prosecutor specifically told him not to reveal the fact that he had made a deal with the State.

*Id.* at \*64. During the hearing on the motion for new trial, Rowe exercised his Fifth Amendment right against self-incrimination and refused to testify.

A post-conviction court should not consider grounds for relief that have been waived or previously determined. *See* Tenn. Code Ann. § 40-30-106(f). An issue is waived "if the petitioner . . . failed to present it for determination in any proceeding before a court of competent jurisdiction in which the ground could have been presented." *Id.* at (g). An issue is previously determined "if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." *Id.* at (h). In order for a full and fair hearing to have occurred, the petitioner must have been given the opportunity to present witnesses or other evidence, "regardless of whether the petitioner actually introduced any evidence." *Id.*

Rowe refused to testify at the hearing on the motion for new trial regarding his sworn statements. On direct appeal, a panel of this court concluded the trial court correctly denied the motion for new trial based upon the affidavits alone. James Murray, *et al.*, 1998 Tenn. Crim. App. LEXIS 1323, at \*65 (citations omitted). Thus, the issue has been previously determined and is not cognizable for post-conviction relief. *See* Marcie C. Murray, 2004 Tenn. Crim. App. LEXIS 141, at \*15 (reaching the same conclusion on the same issue in the appeal of the co-defendant). We also note this court found Rowe's allegations in his affidavit "not credible." James Murray, *et al.,* 1998 Tenn. Crim. App. LEXIS 1323, at \*66 n.15.

We further note that only co-defendants Marcie Murray and Hurt presented the issue of Rowe's post-trial statements as a basis for relief on direct appeal. Thus, even if the claim was not previously determined, the petitioner has waived this issue as a claim for post-conviction relief by failing to present the issue on direct appeal.

Accordingly, we affirm the judgment of the post-conviction court.

---

JOE G. RILEY, SPECIAL JUDGE