# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT KNOXVILLE
### Assigned on Briefs June 29, 2005

## JOSEPH A. MAINE v. STATE OF TENNESSEE

**Direct Appeal from the Circuit Court for Cocke County**
**No. 25,599-II      Richard R. Vance, Judge**

---

**No. E2004-00143-CCA-R3-PC - Filed August 19, 2005**

---

The petitioner, Joseph A. Maine, appeals the dismissal of his petition for post-conviction relief, arguing that his guilty pleas were not knowing or voluntary and that his trial counsel was ineffective for, among other things, erroneously advising him that he would be eligible for release after serving only twenty-five years of his life sentence.[1]  Because the record reflects that the petitioner was similarly misinformed by the trial court as to the release eligibility date for his life sentence, we conclude that his pleas were not knowing or voluntary.  Accordingly, we reverse the post-conviction court's dismissal of the petition and remand the case for the petitioner to withdraw his pleas of guilty.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed and Remanded**

ALAN E. GLENN, J., delivered the opinion of the court, in which JAMES CURWOOD WITT, JR., and ROBERT W. WEDEMEYER, JJ., joined.

Jason S. Randolph, Dandridge, Tennessee, for the appellant, Joseph A. Maine.

Paul G. Summers, Attorney General and Reporter; David E. Coenen, Assistant Attorney General; Al C. Schmutzer, Jr., District Attorney General; and James B. Dunn, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1]The petitioner's crime was committed in August 1997.  As such, his life sentence requires service of fifty-one years before he will be eligible for release. See Tenn. Op. Att'y Gen. No. 97-098 (1997) (stating that anyone sentenced to life imprisonment for a murder committed after July 1, 1995, must serve a mandatory minimum of fifty-one years before becoming eligible for release); State v. Charles Golden, No. 02C01-9709-CR-00362, 1998 WL 518071, at *7 (Tenn. Crim. App. Aug. 21, 1998) ("As noted by the State Attorney General, for crimes committed after July 1, 1995, minimum release eligibility for a life sentence is fifty-one (51) years and not twenty-five (25) years.").

**OPINION**

**FACTS and PROCEDURAL HISTORY**

On May 12, 1998, the petitioner pled guilty in the Cocke County Circuit Court to first degree murder and conspiracy to commit first degree murder and was sentenced by the trial court to concurrent terms of life imprisonment and twenty-five years, respectively. Ten months later, the petitioner filed a *pro se* petition for post-conviction relief in which he raised a number of claims, including that his guilty pleas were unknowing and involuntary and that he was denied the effective assistance of counsel. Following the appointment of post-conviction counsel, the petitioner filed an amended petition in which he alleged that he was induced to plead guilty by false information about his release eligibility provided by his trial counsel, the prosecutor, and the trial court.

The post-conviction court dismissed the petition without a hearing on June 28, 2000, and the petitioner appealed to this court. Following our review, we reversed and remanded the case to the post-conviction court with instructions to hold an evidentiary hearing, concluding that, although poorly drafted, the *pro se* and amended petitions contained sufficient facts to present a colorable claim for relief:

> The facts contained in the petitions appear to support a claim of involuntary and unknowing guilty pleas because of the misinformation about the petitioner's release eligibility date; however, it is unclear if these facts are also argued to support other allegations. This court has noted that "a failure to correctly inform the [petitioner] about parole eligibility dates, without more, would not be a basis for post-conviction relief." James Bryant Weston v. State, No. 03C01-9612-CR-00484, 1998 WL 133834, at *1 (Tenn. Crim. App. at Knoxville, March 25, 1998). This is because "a prisoner has no constitutional right to conditional release prior to expiration of his sentence." Luther Robert Brown, III v. State, No. E1999-02290-CCA-R3-CD, 2001 WL 177056, at *2 (Tenn. Crim. App. at Knoxville, February 23, 2001); see also James R. Miller v. State, No. 03C01-9608-CR-00288, 1997 WL 625282, at *2 n.2 (Tenn. Crim. App. at Knoxville, October 10, 1997) (stating that "[r]elease eligibility for a felon establishes only eligibility for release and is not an absolute right"). However, as then Judge Paul G. Summers noted, incorrect information concerning the petitioner's release eligibility date "may be evidence that his pleas were involuntary and unknowing." See Weston, No. 03C01-9612-CR-00484, 1998 WL 133834, at *1.

Joseph A. Maine v. State, No. E2000-01813-CCA-R3-PC, 2001 WL 394851, at *3 (Tenn. Crim. App. Apr. 19, 2001).

On September 12, 2003, the petitioner supplemented his two previous petitions for post-conviction relief with a second amended petition in which he alleged his guilty pleas were rendered unknowing and involuntary due to the misinformation he received about his release eligibility date;

his confession was invalid due to the fact that he was underage at the time and was neither afforded an attorney nor allowed to have his parent present during questioning; and his trial counsel provided ineffective assistance by giving him erroneous advice as to his release eligibility date and by failing to ensure that a hearing on his motion to suppress his confession be held prior to entry of his guilty pleas.

At the December 16, 2003, evidentiary hearing, the petitioner's trial counsel identified a May 4, 1998, document signed by himself and the petitioner, which was subsequently admitted as an exhibit to the hearing. This document states in pertinent part:

> I, Joe Maine, have been fully advised by [trial counsel] of the following plea offer:
>
> 1.  Plead guilty to First Degree Murder.
>
> 2.  Receive a Life Sentence which means I will serve twenty-five (25) years flat. I will be eligible for release after serving (25) twenty-five years flat if I behave.
>
> 3.  I will testify for the State.
>
> 4.  The DA will provide a letter saying I cooperated.

Trial counsel testified he and the petitioner "talked long and hard" about what being eligible for release meant. He said that he told the petitioner it did not mean he would automatically get out of prison after serving twenty-five years and that if the petitioner did not behave, he would never get out of prison. Trial counsel stated that he and the petitioner also had lengthy discussions about how the plea agreement eliminated the need for a hearing on trial counsel's motion to suppress the petitioner's confession.

Asked on cross-examination whether the petitioner ever said he would not accept the plea unless he would be released after serving twenty-five years, trial counsel replied:

> No, sir. It was understood and it was explained in detail, over and over again, that the twenty-five years, he was going to build that and then after that he would be eligible for parole. It did not mean that on twenty-five years and one day that he would be walking out the door.

Trial counsel said it was clear that the conspiracy sentence would run concurrently to the murder sentence, that it was explained to the petitioner at the submission hearing, and that there was "no dispute about that whatsoever." He stated that since the petitioner was a juvenile at the time of the offenses, the death penalty was not an option, and therefore their "only options were life with parole and life without parole and [they] got the better of the two."

Trial counsel acknowledged on redirect that there was a possibility that the petitioner's confession might have been suppressed. He explained, however, that with two codefendants involved, creating a "race to get the best deal," they could have "w[o]n the battle but los[t] the war," as the codefendants could have provided "very detrimental" testimony against the petitioner at trial.

The petitioner testified that his understanding was that he would have to serve twenty-five years and then would be able to get out on parole.[2] He said his trial counsel and several attorneys for the State talked to him together about what the pleas entailed, and when he commented he would be "about forty-five" by the time he got out, one of them joked that "it wasn't too old." The petitioner further testified that he thought the conspiracy to commit murder charge was part of the first degree murder charge and had not understood that it would constitute a separate conviction. He said he was seventeen years old when he gave his statement. Although he asked for an attorney and for his mother, neither was allowed to be present during his questioning.

On cross-examination, the petitioner acknowledged he informed the trial court during the plea colloquy that he was satisfied with trial counsel's representation, understood the rights he was waiving, and was freely and voluntarily entering his pleas. He further acknowledged that the trial court told him he would not be eligible for parole until he had served twenty-five calendar years, that that did not mean he would be paroled in twenty-five years, and that "no one kn[ew] when [the petitioner would] first be eligible for parole." On redirect examination, the petitioner explained that he "wasn't . . . really listening" to the trial court during the plea colloquy, and he reiterated that it was his understanding that he would be able to get out on parole after serving twenty-five years of his life sentence.

The State presented a single witness, Detective Robert Caldwell of the Cocke County Sheriff's Department, who testified that he took the petitioner's statement at the Cocke County Juvenile Court Office after informing him of his rights. He said the petitioner did not appear to be under the influence of drugs or alcohol and did not ask for a lawyer or for his mother to be present during questioning.

The post-conviction court issued detailed oral findings of fact and conclusions of law at the conclusion of the evidentiary hearing. Among other things, the court noted that, during the plea colloquy, the petitioner stated that he understood the sentences he was receiving and expressed his satisfaction with counsel's representation. The court further noted trial counsel's testimony that he and the petitioner had extensive discussions about the fact that parole eligibility did not guarantee

---

[2]Although the petitioner, the State, and the post-conviction court referred to the petitioner's being released on parole, a defendant serving a life sentence is entitled to "release" rather than "parole," as we have previously explained: "The term 'life imprisonment with the possibility of parole' is inaccurate and is mistakenly used to differentiate between the more severe sentence of life imprisonment without possibility of parole. More accurately stated, a sentence of life in prison entitles the defendant to be released, as opposed to paroled, after serving 100% of sixty years less any eligible credits, so long as they do not operate to reduce the sentence by more than 15%, or nine years, which would result in a total sentence of fifty-one years." Kermit Penley v. State, No. E2004-00129-CCA-R3-PC, 2004 WL 2439287, at *3 (Tenn. Crim. App. Nov. 1, 2004), perm. to appeal denied (Tenn. Feb. 28, 2005).

-4-

release from prison. The court concluded, therefore, that the petitioner had failed to show he was under any misunderstanding with respect to the pleas he entered or that trial counsel was deficient in his representation.

On July 29, 2004, the post-conviction court entered a brief written order dismissing the petition on the basis that the petitioner had failed to present any credible evidence that trial counsel "was ineffective in any way."

## ANALYSIS

Asserting that "knowing and understanding [the] parole eligibility date . . . is a vital and integral part of understanding and knowing the consequences of [a] guilty plea," the petitioner argues that the misinformation he received about the number of years he would have to serve of his life sentence before becoming eligible for release rendered his guilty pleas unknowing and involuntary. The petitioner also argues that trial counsel was ineffective for giving him the erroneous information about his release eligibility and for failing to hold a hearing on the motion to suppress his confession. The State argues that the evidence does not preponderate against the post-conviction court's findings that the petitioner's guilty pleas were knowing and voluntary and that he received the effective assistance of trial counsel.

The post-conviction petitioner bears the burden of proving his allegations by clear and convincing evidence. See Tenn. Code Ann. § 40-30-110(f) (2003). When an evidentiary hearing is held in the post-conviction setting, the findings of fact made by the court are conclusive on appeal unless the evidence preponderates against them. See Tidwell v. State, 922 S.W.2d 497, 500 (Tenn. 1996). Where appellate review involves purely factual issues, the appellate court should not reweigh or reevaluate the evidence. See Henley v. State, 960 S.W.2d 572, 578 (Tenn. 1997). However, review of a trial court's application of the law to the facts of the case is *de novo*, with no presumption of correctness. See Ruff v. State, 978 S.W.2d 95, 96 (Tenn. 1998).

When analyzing a guilty plea, we look to the federal standard announced in Boykin v. Alabama, 395 U.S. 238, 89 S. Ct. 1709, 23 L. Ed.2d 274 (1969), and the state standard set out in State v. Mackey, 553 S.W.2d 337 (Tenn. 1977). State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999). In Boykin, the United States Supreme Court held that there must be an affirmative showing in the trial court that a guilty plea was voluntarily and knowingly given before it can be accepted. 395 U.S. at 242, 89 S. Ct. at 1711. Similarly, the Tennessee Supreme Court in Mackey required an affirmative showing of a voluntary and knowledgeable guilty plea, namely, that the defendant has been made aware of the significant consequences of such a plea. Pettus, 986 S.W.2d at 542. A plea is not "voluntary" if it results from ignorance, misunderstanding, coercion, inducements, or threats. Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993). The trial court must determine if the guilty plea is "knowing" by questioning the defendant to make sure he or she fully understands the plea and its consequences. Pettus, 986 S.W.2d at 542; Blankenship, 858 S.W.2d at 904.

Because the plea must represent a voluntary and intelligent choice among the alternatives available to the defendant, the trial court may look at a number of circumstantial factors in making this determination. Blankenship, 858 S.W.2d at 904. These factors include: (1) the defendant's relative intelligence; (2) his familiarity with criminal proceedings; (3) whether he was represented by competent counsel and had the opportunity to confer with counsel about alternatives; (4) the advice of counsel and the court about the charges against him and the penalty to be imposed; and (5) the defendant's reasons for pleading guilty, including the desire to avoid a greater penalty in a jury trial. Id. at 904-05.

At the guilty plea hearing, the trial court informed the petitioner of the following with respect to the sentencing consequences of his guilty pleas:

> That sentence [twenty-five year sentence for conspiracy to commit first degree murder] will run concurrently with the life sentence that you've received. Under the law you will not be eligible for parole until you've served twenty-five calendar years of that sentence of life. That doesn't mean you'll make parole at that time. And who knows, no one knows when you would be first eligible for parole. But that's what the law requires.

The post-conviction court relied heavily on the above statement, as well as trial counsel's testimony and the documentary evidence presented, to conclude that the petitioner was fully informed of the consequences of his pleas and had therefore failed to show that his pleas were involuntary or unknowing or that trial counsel was deficient in his advice:

> Considering the testimony, first of all . . . [trial counsel] present[ed] a statement which was signed by [the petitioner]. A short statement but covered the plea which was to be entered and the advi[c]e given. [Trial counsel] further testified that they had extensive discussions. That he clearly told him that parole eligibility didn't mean he'd be released at that time but that's when he would become eligible to be considered. That it would be up to the Parole Board when he was actually released. In fact, told him if he didn't behave, he'd never get out. There's nothing incorrect in that advice.
>
> . . . That after lengthy discussions [the petitioner] agreed that it was in his best interest to plead guilty to a sentence which would permit the possibility of parole at some point in the future.
>
> . . . .
>
> The Court has several documentary pieces of evidence. We have the Plea Agreement and Waiver of Trial by Jury forms which were signed by [the petitioner] that clearly state the two offenses of First Degree Murder and Conspiracy to Commit First Degree Murder. We have the transcript of the plea hearing in which [the

petitioner] made certain statements in responses to questions under oath. . . . [W]hen we look at the questions asked and the answers given it becomes very clear that at that Plea Hearing [the petitioner] was fully advised of the consequences of his plea, he clearly understood it, he said he understood it, he said he didn't have any further questions about it.  So we must, in any case, give consideration to that sworn testimony.

            . . . .

        The [James Bryant] Weston [v. State, No. 03C01-9612-CR-00484, 1998 WL 133834 (Tenn. Crim. App. Mar. 25, 1998)] case that has been cited by everybody is clearly distinguishable from this case.  In the facts in the Weston case much was alleged about things that Mr. Weston didn't understand or had been perhaps not correctly advised about.  But it is right on point in saying that a misunderstanding regarding parole eligibility was not grounds for post conviction relief.

        But in this case there was no misunderstanding.  [The petitioner] was advised, thoroughly discussed, thoroughly gone over, testified in open court under oath, there simply was no misunderstanding.  He knew what his sentence was and that's exactly the sentence he received.  So that there is simply no evidence whatsoever that [trial counsel] was ineffective in any respect.

We conclude that the evidence preponderates against the findings and conclusions of the post-conviction court.  It was undisputed that the petitioner received inaccurate information from his trial counsel, the prosecutors, and the trial court that he would be required to serve only twenty-five years of his life sentence before becoming eligible for release.  Thus, regardless of how many times the petitioner was told that being eligible for release did not guarantee he would be released, there was clearly a misunderstanding of significant proportions, apparently shared by all parties involved, with respect to the consequences of the petitioner's first degree murder plea.  Without question, achieving release eligibility after fifty-one years is dramatically different from achieving release eligibility after twenty-five years.  Indeed, depending on a defendant's age at sentencing, a life sentence may be the practical equivalent of a life sentence without possibility of parole.

In Jaco v. State, 120 S.W.3d 828, 830 (Tenn. 2003), the petitioner argued that his guilty pleas to two counts of attempted rape were rendered unknowing and involuntary because he was not advised of the mental health requirements he would be required to meet as a sex offender, pursuant to Tennessee Code Annotated section 40-35-503(c) (2003), before he could be released on parole.  In rejecting the petitioner's claim, our supreme court distinguished the facts of his case, in which he was advised of the accurate parole eligibility date but not informed of the specific conditions he would be required to meet to achieve release, from the facts in Howell v. State, 569 S.W.2d 428, 435 (Tenn. 1978), in which the court granted a petitioner post-conviction relief on the basis that he entered his guilty plea while under a misunderstanding about his release eligibility date:

-7-

Unlike the defendant in Howell, Mr. Jaco was not misinformed about his parole eligibility date. He will in fact become parole *eligible* after serving thirty percent of his sentence although he may not *actually* be released. His release eligibility date is simply the point at which he will be considered for parole under the applicable standards. . . . .

In this case, the post-conviction trial court found that no sex offender has been released after serving only thirty percent of his sentence unless the mental health professional concluded that a future sex offense was physically impossible. Nonetheless, a Range I standard offender convicted of a sex crime becomes parole eligible after serving thirty percent of the actual sentence imposed. Tenn. Code Ann. § 40-35-501(c) (2003). The required evaluation affects the likelihood of actual release, but it does not affect the release eligibility date. Thus, unlike the defendant in Howell, Mr. Jaco received accurate information regarding his release eligibility date prior to entering his plea.

Jaco, 120 S.W.3d at 832.

This court similarly concluded that erroneous information given to a petitioner that certain of his sentences would run concurrently entitled him to the appointment of counsel and an evidentiary hearing on the issue of whether his guilty pleas were unknowing and involuntary:

While it may be true that one should realize the consequences for a crime committed while on parole status, common sense would also suggest that the petitioner is entitled to rely upon the advice of his attorney, especially when confirmed by the trial judge. In our view, the petitioner should have been granted counsel, allowed to amend, and permitted an evidentiary hearing. If, based upon the particular circumstances of this case, it is established that the plea agreement was entered into under the collective misunderstanding that the Cheatham County and Hickman County sentences could and would be concurrently served, the plea agreement should be set aside as neither knowingly nor voluntarily made and the petitioner should be brought to trial in Hickman County.

Charlton v. State, 987 S.W.2d 862, 867 (Tenn. Crim. App. 1998).

Like the petitioners in Howell and Charlton, the petitioner in this case entered into his guilty pleas after having been significantly misinformed by both the trial court and his counsel about the effects of the sentences he would be required to serve. Under such circumstances, his guilty pleas cannot be found to have been knowing and voluntary. Accordingly, we reverse the post-conviction court's dismissal of the petition and remand for the petitioner to withdraw his pleas of guilty.

**CONCLUSION**

Based on the foregoing authorities and reasoning, we reverse the judgment of the post-conviction court and remand the matter for further proceedings consistent with this opinion.

_____
ALAN E. GLENN, JUDGE