IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON

Assigned on Briefs March 5, 2019

## WILLIE LEWIS v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Shelby County**
No. 08-05976        James M. Lammey, Judge

_____

### No. W2018-01016-CCA-R3-PC

_____

A Shelby County jury convicted Willie Lewis, Petitioner, of second degree murder. Petitioner filed a petition for post-conviction relief and argued that he received ineffective assistance of counsel. The post-conviction court denied relief, and Petitioner appealed. On appeal, Petitioner asserts that the post-conviction court made insufficient findings of fact and conclusions of law for this court to review its decision. Additionally, Petitioner argues that trial counsel's representation during the sentencing phase was deficient for failing to ensure that Petitioner participated in the preparation of the presentence report. Petitioner contends that he was prejudiced by this deficiency because trial counsel did not present any mitigating circumstances to the trial court and Petitioner received the maximum sentence within the applicable range. After a thorough review of the facts and applicable case law, we affirm the post-conviction court's denial of relief.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ALAN E. GLENN and ROBERT H. MONTGOMERY, JR., JJ., joined.

Robert Golder, Memphis, Tennessee, for the appellant, Willie Lewis.

Herbert H. Slatery III, Attorney General and Reporter; Jonathan H. Wardle, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Leslie Byrd, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

### *Jury trial and direct appeal*

On appeal from Petitioner's jury trial, this court summarized the evidence introduced at trial and affirmed Petitioner's convictions. *State v. Willie Lewis*, No. W2010-02517-CCA-R3-CD, 2012 WL 4459809, at *1 (Tenn. Crim. App. Sept. 27, 2012), *perm. app. denied* (Tenn. Feb. 12, 2013). Petitioner shot the victim, Jerry Williams, after an altercation in May 2008. *Id.* Petitioner had given Charles Valentine marijuana in exchange for a DVD player and a handgun. *Id.* The next day, Petitioner asked Mr. Valentine to return the marijuana because the DVD player and handgun did not work. *Id.* Mr. Valentine told Petitioner that he would pay Petitioner the next day, and Petitioner said, "If I don't get my money, something bad is going to happen—one of us going to leave on a stretcher—somebody is gonna [sic] run in the house—shoot the kids." *Id.* Petitioner gave Mr. Valentine until 9:00 p.m. to obtain the money for the marijuana and left Mr. Valentine's apartment. *Id.* Mr. Valentine went to his uncle, the victim, to ask for money to pay Petitioner. *Id.* The victim got into Mr. Valentine's vehicle with Mr. Valentine, and they returned to Mr. Valentine's apartment; unbeknownst to Mr. Valentine, the victim was armed. *Id.*

When Mr. Valentine and the victim arrived at Mr. Valentine's apartment, Petitioner was sitting at the top of the stairs that led to Mr. Valentine's apartment; Petitioner was loading or cleaning a gun. *Id.* at *1-2. Petitioner had a gun in his hand and asked Mr. Valentine if he "went and got backup . . . ?" *Id.* at *1. After Mr. Valentine and the victim entered the apartment, the victim showed Mr. Valentine that he was armed. *Id.* Petitioner knocked on the apartment door and asked if Mr. Valentine had his money. *Id.* Petitioner stated, "If I don't get my money, one of us gonna [sic] be leavin' on a stretcher tonight. It ain't gonna [sic] be me gonna [sic] need one, bro." *Id.* Mr. Valentine informed Petitioner that he did not have the money, and they argued. *Id.* Petitioner slapped Mr. Valentine, and the victim pushed Petitioner into the hallway where Petitioner argued with the victim. *Id.*

The victim reentered the apartment, and Petitioner followed him with his gun drawn. *Id.* The victim ran towards the back door of the apartment while drawing his gun. *Id.* "[J]ust before the shooting, [Petitioner] was in the hall and said, '[A]nybody don't want to get shot, get up out the hallway.'" *Id.* at *2. Mr. Valentine heard a shot come from the front door. *Id.* at *1. The victim opened the back door of the apartment, and Mr. Valentine heard him fire his gun; in total, Mr. Valentine heard three shots. *Id.* Mr. Valentine went to a neighbor's apartment and asked the neighbor to call the police

- 2 -

because "someone was trying to shoot him and the victim." *Id.* at *2. The victim died from a gunshot wound at the apartment. *Id.* The medical examiner who conducted the autopsy of the victim determined that the victim's blood alcohol content was .181; the medical examiner "agreed that alcohol could cause a person to become aggressive and angry but said a person's reaction to alcohol depended on the person's tolerance to alcohol." *Id.* at *4.

After the offense, Petitioner surrendered to police and gave several statements that alleged that the victim was the initial aggressor and that Petitioner feared for his safety during the altercation. *Id.* at *3-6. The jury convicted Petitioner of second degree murder. *Id.* at *8. On appeal, this court affirmed the judgment of the trial court. *Id.* at *16.

### *Post-conviction proceedings*

Petitioner filed a timely pro se post-conviction petition on January 28, 2014, and argued that he received ineffective assistance of counsel from trial counsel, who also represented Petitioner on appeal. More specifically, Petitioner argued that trial counsel's representation was deficient by failing to: (1) assert a *Batson* challenge during voir dire; (2) assert a "*Momon* Violation"; (3) assert an actual innocence defense; (4) investigate the case, specifically the victim's family and Jennifer L. Hoff; (5) challenge inconsistencies in Mr. Valentine's testimony; (6) argue that the jury should find Petitioner guilty of the lesser-included offense of voluntary manslaughter; (7) challenge Petitioner's illegal sentence; and (8) argue on appeal that the evidence was insufficient at trial. After appointing counsel to represent Petitioner, the post-conviction court held a hearing on the petition.

At the post-conviction hearing, trial counsel testified that he had practiced criminal defense law for eighteen years. Trial counsel stated that his "biggest concern" about Petitioner's case was the fact that Petitioner followed the victim into the house and, according to the State, chased the victim through the house. Trial counsel explained that the theory of the case was that Petitioner acted in self-defense by shooting the victim. Thus, trial counsel hoped that the jury would acquit Petitioner under the theory of self-defense or find Petitioner guilty of reckless homicide. Trial counsel could not recall specific details about the investigation of Petitioner's case, but he stated that, generally, the trial court appoints a private investigator who interviews witnesses, reviews the crime scene, investigates criminal records, and then shares that information with trial counsel. Trial counsel explained that, in his law office, the discovery coordinator makes copies of discovery and sends a copy to the client.

Trial counsel recalled that the victim had a tattoo that said "killer." Trial counsel sought to introduce evidence of the victim's tattoo because the defense theory was that the victim was the initial aggressor and a tattoo of "killer" gave the impression that the victim was a violent person. Trial counsel wanted to show that Petitioner's fear of the victim was reasonable because the victim had a prior history of violent acts. The trial court denied trial counsel's request to admit evidence of the tattoo during direct examination, but trial counsel obtained admission of the evidence of the tattoo through the admission of the medical examiner's autopsy report as substantive evidence. The trial court ruled that, if trial counsel discussed the "killer" tattoo during closing argument, the State could rehabilitate the victim's character by introducing Petitioner's previous convictions or bad acts. Trial counsel noted that, on appeal, this court held that the trial court's ruling was harmless error. *See Willie Lewis*, 2012 WL 4459809, at \*10. Therefore, trial counsel chose to not argue to the jury that the victim's "killer" tattoo was evidence of his violent character.

Regarding Petitioner's issue on sentencing, trial counsel noted that the trial court had great discretion over sentencing and that the victim's murder was "aggravated" because Petitioner chased the victim through the residence before shooting him. Trial counsel testified that, if he had known about any mental health issues of Petitioner, he would have presented those issues as mitigating evidence for a reduced sentence. Regarding Petitioner's allegation that trial counsel failed to request/argue that the jury be charged that aggravated assault was a lesser-included offense of second degree murder, trial counsel stated that he believed that Petitioner was going to be convicted as charged, convicted of reckless homicide, or acquitted under a theory of self-defense.[1]

Regarding Petitioner's allegation that trial counsel should have requested gunshot residue testing of the crime scene, trial counsel stated that the Memphis Police Department ("MPD") occasionally tests for the presence of gunshot residue. Trial counsel testified that the test was "fairly inaccurate" because gunshot residue can be easily wiped away with water or by touch. Additionally, gunshot residue easily transfers to other surfaces in the direction that the gun is aimed. Therefore, the MPD typically does not send a gunshot residue sample to be tested unless the Shelby County District Attorney's Office requests the test. Trial counsel was not surprised by the lack of a gunshot residue test in the State's discovery file because the victim was running away when Petitioner shot the victim.

---

[1] Post-conviction counsel noted during the hearing that the trial court instructed the jury that aggravated assault was a lesser-included offense of second degree murder.

On cross-examination, trial counsel testified that his ability to present mitigating evidence to the trial court at the sentencing hearing was hampered by Petitioner's failure to be interviewed for the preparation of the presentence report.[2] Trial counsel agreed that, in this case, the trial court was concerned about the fact that Petitioner was waiting on the victim and Mr. Valentine to arrive at the residence and then threatened the victim and Mr. Valentine. Trial counsel agreed that it was more difficult to argue to the jury that Petitioner acted in self-defense when Petitioner informed police that he followed the victim through the residence to "finish him off[.]" Regarding Petitioner's allegation that trial counsel coerced him into testifying, trial counsel stated that his practice was "to speak to the client throughout the trial on that issue letting them know that they don't have to make that decision [until] the very end." Trial counsel also agreed that Petitioner's statements to police largely corroborated Mr. Valentine's testimony. Trial counsel stated that actual innocence was not a viable defense for Petitioner.

Petitioner testified that he never received any witness statements until the post-conviction court appointed counsel. The State offered Petitioner a sentence of twenty years; he discussed this offer with trial counsel but declined the offer because he believed he would be convicted of voluntary manslaughter at trial. Petitioner testified that only one African-American individual was included in the jury of his trial; he asserted that this violated the Equal Protection Clause of the Fourteenth Amendment. Petitioner agreed that he discussed the issue of whether he should testify at trial with trial counsel. Trial counsel advised him to testify because he did not have a prior criminal record. Petitioner followed trial counsel's advice, but he believed that trial counsel should have discussed with him the trial court's ruling that Petitioner could not introduce evidence of the victim's "killer" tattoo without allowing the State to cross-examine him about prior bad acts. Petitioner denied that he stated that he followed the victim into the apartment to "finish him"; he explained that he committed the offense in "the heat of the moment."

Petitioner explained that he wanted to admit the transcript of his preliminary hearing so that the jury could hear the multiple "stories" of Mr. Valentine. Additionally, Petitioner explained that he wanted the trial court to instruct the jury that the "true man" doctrine was a lesser-included offense of second degree murder. Petitioner stated that the "true man" doctrine states that individuals have the right to stand their ground. Petitioner alleged that trial counsel's performance was deficient because trial counsel did not request the "true man" doctrine instruction. Regarding his sentence, Petitioner stated that he believed that his sentence was excessive because he received the maximum sentence within the applicable range. Petitioner asserted that, if he had been aware of all of the potential evidence and witness statements in his case, he "probably" would have accepted

---

[2] The record on appeal is unclear as to why Petitioner was not interviewed for the preparation of the presentence report.

the State's offer of a sentence of twenty years. Petitioner also asserted that trial counsel should have requested a gunshot residue test, which would have shown that the victim was the initial aggressor. Additionally, Petitioner alleged that trial counsel should have hired an expert witness to testify regarding "the scene of the crime." Petitioner believed that an expert in crime scene reconstruction would have been able to establish that Petitioner's version of the offense was correct, not Mr. Valentine's.

On cross-examination, Petitioner agreed that he received initial discovery from the State. He also agreed that trial counsel did not force him to testify. Regarding the "true man" doctrine, Petitioner agreed that he had not been invited into the apartment when he entered and shot the victim. Petitioner stated that trial counsel had a "folder" with evidence that he had completed several programs while he was incarcerated prior to his sentencing hearing.

At the conclusion of the hearing, the post-conviction court stated that "there [wa]s absolutely nothing that [trial counsel] could have done that would have helped [Petitioner] be acquitted of this murder second degree" and that trial counsel "did nothing improper." The post-conviction court stated that trial counsel "appealed the right things" and concluded that trial counsel's representation was not deficient. Regarding the issue of admitting evidence of the victim's "killer" tattoo, the post-conviction court stated that trial counsel "had no errors" and noted that this court determined that the trial court's ruling was harmless error.

After remand from this court, the post-conviction court entered an order setting out its findings of fact and conclusions of law. The trial court concluded that Petitioner failed to establish that he was prejudiced by trial counsel's failure to allege a *Batson* violation because "Petitioner did not develop any factual evidence during the Post-Conviction Relief hearing []or within Petitioner's motion for Post-Conviction Relief to support an inference of racially motivated jury selection." Regarding Petitioner's allegation that trial counsel coerced him to testify at trial, the post-conviction court found that Petitioner admitted at the post-conviction hearing that trial counsel merely advised Petitioner to testify. Additionally, the post-conviction court found that trial counsel discussed the risks and benefits of testifying with Petitioner. The post-conviction court noted that trial counsel "specifically testified that Petitioner's decision not to participate in the presentence report limited the nature in which mitigating evidence would be admissible during the trial." The post-conviction court concluded that Petitioner had not established that he was prejudiced by his testimony at trial because "Petitioner's testimony allowed Petitioner to clarify his statements against interest to police by adding context, as well as admitting evidence to potentially support a claim for self-defense."

- 6 -

Regarding Petitioner's allegation that trial counsel failed to develop a theory of factual innocence during trial, the post-conviction court noted that trial counsel testified that actual innocence was not a viable defense because of Petitioner's statements to police. The post-conviction court concluded that trial counsel's decision not to pursue a defense of actual innocence was strategic and not deficient. Regarding Petitioner's allegation that trial counsel failed to investigate a gunshot residue test, the post-conviction court concluded that trial counsel's performance in this aspect was not deficient because the MPD did not take gunshot residue samples from the crime scene. The post-conviction court also found that trial counsel testified that gunshot residue tests were unreliable. Additionally, the post-conviction court concluded that trial counsel was not deficient in other areas of investigation because trial counsel hired a private investigator, utilized a discovery coordinator, and communicated with Petitioner.

Further, the post-conviction court concluded that Petitioner was not prejudiced by trial counsel's failure to challenge the inconsistencies in the testimony of Mr. Valentine. The post-conviction court noted that trial counsel "referenced the inconsistencies of Valentine's testimony multiple times to the jury during closing arguments[,]" "addresse[d] inconsistencies of the [S]tate's other witnesses[,]" and based the theme of closing arguments "around the assertion that Valentine [wa]s unreliable, untrustworthy, and caused the exacerbation of the altercation." The post-conviction court also found that Petitioner testified that trial counsel "caught the witnesses in several lies." Regarding Petitioner's assertion that trial counsel should have asked the trial court to instruct the jury that voluntary manslaughter was a lesser-included offense, the post-conviction court found that trial counsel "addressed the lesser-included offenses both at trial and in closing arguments." Additionally, the trial court found that trial counsel's trial strategy was "to frame the issue as a binary decision between self-defense and reckless killing." Thus, the post-conviction court concluded that trial counsel's performance regarding the instruction of lesser-included offenses was not deficient.

Regarding Petitioner's contention that trial counsel was deficient for failing to challenge his sentence on appeal, the post-conviction court found that Petitioner's sentence was "reasonable under the facts of the case" and concluded that trial counsel's decision not to challenge Petitioner's sentence was not deficient. Lastly, regarding Petitioner's assertion that trial counsel should have challenged evidence on appeal, the post-conviction court concluded that it was "reasonable for [trial counsel] to not challenge the sufficiency of evidence on appeal[.]" The post-conviction court concluded that trial counsel was not deficient on this ground.

Petitioner now timely appeals the post-conviction court's denial of relief.

## Analysis

On appeal, Petitioner argues that: (1) the post-conviction court made insufficient findings of fact and conclusions of law; and (2) the post-conviction court erred in denying relief on Petitioner's claim that he received ineffective assistance of counsel. More specifically, Petitioner argues that trial counsel's performance in the sentencing phase was deficient for failing to ensure Petitioner was interviewed for the presentence report. Petitioner asserts that he was prejudiced by this deficiency because trial counsel had no grounds to argue that Petitioner's sentence should be reduced because of the existence of mitigating factors. The State responds that the post-conviction court's oral findings of fact and conclusions of law were sufficient for this court to review. The State additionally argues that the post-conviction court properly denied relief to Petitioner because there is no evidence in the record to support Petitioner's claim, which was not raised in the petition for post-conviction relief.

### *Adequacy of factual findings and conclusions of law*

Tennessee Supreme Court Rule 28 section 9 states that a post-conviction court "shall enter an order granting or denying the petition within sixty (60) days of the conclusion of the proof. The order shall contain specific findings of fact and conclusions of law relating to each issue presented." Similarly, Tennessee Code Annotated section 40-30-111(b) states that after disposing of a petition, the post-conviction court "shall enter a final order, and except where proceedings for delayed appeal are allowed, shall set forth in the order or a written memorandum of the case all grounds presented, and shall state the findings of fact and conclusions of law with regard to each ground." Although the requirements of section 40-30-111(b) are mandatory, "the failure of the trial judge to abide by the requirement does not always mandate a reversal of the trial court's judgment." *State v. Swanson*, 680 S.W.2d 487, 489 (Tenn. Crim. App. 1984). "The primary intent of the legislature underlying this requirement is to facilitate appellate review of the lower court's proceedings, and the failure to meet the requirement neither constitutes constitutional abridgement nor renders the conviction or sentence of the appellant void or voidable." *Id.*

On remand from this court, the post-conviction court entered an order that set out its findings of fact and conclusions of law regarding Petitioner's ground for relief. Therefore, the record is sufficient for this court to conduct a review.

### *Standard of review for post-conviction claims*

In order to prevail on a petition for post-conviction relief, a petitioner must prove all factual allegations by clear and convincing evidence. *Jaco v. State*, 120 S.W.3d 828,

830 (Tenn. 2003). Post-conviction relief cases often present mixed questions of law and fact. *See Fields v. State*, 40 S.W.3d 450, 458 (Tenn. 2001). Appellate courts are bound by the post-conviction court's factual findings unless the evidence preponderates against such findings. *Kendrick v. State*, 454 S.W.3d 450, 457 (Tenn. 2015). When reviewing the post-conviction court's factual findings, this court does not reweigh the evidence or substitute its own inferences for those drawn by the post-conviction court. *Id.*; *Fields*, 40 S.W.3d at 456 (citing *Henley v. State*, 960 S.W.2d 572, 578 (Tenn. 1997)). Additionally, "questions concerning the credibility of the witnesses, the weight and value to be given their testimony, and the factual issues raised by the evidence are to be resolved by the [post-conviction court]." *Fields*, 40 S.W.3d at 456 (citing *Henley*, 960 S.W.2d at 579); *see also Kendrick*, 454 S.W.3d at 457. The trial court's conclusions of law and application of the law to factual findings are reviewed de novo with no presumption of correctness. *Kendrick*, 454 S.W.3d at 457.

### *Ineffective assistance of counsel*

On appeal, Petitioner only asserts one ground of ineffective assistance of counsel—that trial counsel's performance during the sentencing phase was deficient by failing to ensure that Petitioner participated in the preparation of the presentence report. Petitioner alleges that he was prejudiced by this deficiency because he received the maximum sentence within the applicable range as a first-time offender, and the trial court may have ordered a lesser sentence if trial counsel had presented mitigating evidence. However, this ground of relief was not included in the petition for post-conviction relief. "Issues raised for the first time on appeal are considered waived." *State v. Johnson*, 970 S.W.2d 500, 508 (Tenn. Crim. App. 1996) (citing Tenn. R. App. P. 36)); *see Cauthern v. State*, 145 S.W.3d 571, 599 (Tenn. Crim. App. 2004). Petitioner has not presented any evidence to rebut the presumption that this issue is waived because it was not included in the post-conviction petition. Therefore, this ground is waived. In any event, we will briefly address the merits of the ground for relief.

The right to effective assistance of counsel is safeguarded by the Constitutions of both the United States and the State of Tennessee. U.S. Const. amend. VI; Tenn. Const. art. I, § 9. In order to receive post-conviction relief for ineffective assistance of counsel, a petitioner must prove: (1) that counsel's performance was deficient; and (2) that the deficiency prejudiced the defense. *Strickland v. Washington*, 466 U.S. 668, 687 (1984); *see State v. Taylor*, 968 S.W.2d 900, 905 (Tenn. Crim. App. 1997) (stating that the same standard for ineffective assistance of counsel applies in both federal and Tennessee cases). Both factors must be proven in order for the court to grant post-conviction relief. *Strickland*, 466 U.S. at 687; *Henley*, 960 S.W.2d at 580; *Goad v. State*, 938 S.W.2d 363, 370 (Tenn. 1996). Accordingly, if we determine that either factor is not satisfied, there is no need to consider the other factor. *Finch v. State*, 226 S.W.3d 307, 316 (Tenn. 2007)

(citing *Carpenter v. State*, 126 S.W.3d 879, 886 (Tenn. 2004)). Additionally, review of counsel's performance "requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Strickland*, 466 U.S. at 689; *see also Henley*, 960 S.W.2d at 579. We will not second-guess a reasonable trial strategy, and we will not grant relief based on a sound, yet ultimately unsuccessful, tactical decision. *Granderson v. State*, 197 S.W.3d 782, 790 (Tenn. Crim. App. 2006).

As to the first prong of the *Strickland* analysis, "counsel's performance is effective if the advice given or the services rendered are within the range of competence demanded of attorneys in criminal cases." *Henley*, 960 S.W.2d at 579 (citing *Baxter v. Rose*, 523 S.W.2d 930, 936 (Tenn. 1975)); *see also Goad*, 938 S.W.2d at 369. In order to prove that counsel was deficient, the petitioner must demonstrate "that counsel's acts or omissions were so serious as to fall below an objective standard of reasonableness under prevailing professional norms." *Goad*, 938 S.W.2d at 369 (citing *Strickland*, 466 U.S. at 688); *see also Baxter*, 523 S.W.2d at 936.

Even if counsel's performance is deficient, the deficiency must have resulted in prejudice to the defense. *Goad*, 938 S.W.2d at 370. Therefore, under the second prong of the *Strickland* analysis, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted).

At the post-conviction hearing, trial counsel noted that the trial court had great discretion over sentencing and that the victim's murder was "aggravated" because Petitioner chased the victim through the residence before shooting him. Trial counsel testified that, if he had known about any mental health issues of Petitioner, he could have presented those issues as mitigating evidence for a reduced sentence. Trial counsel testified that his ability to present mitigating evidence to the trial court at the sentencing hearing was hampered by Petitioner's failure to be interviewed for the preparation of the presentence report. Trial counsel agreed that the trial court was concerned about the fact that Petitioner was waiting on the victim and Mr. Valentine to arrive at the residence and then threatened the victim and Mr. Valentine.

The post-conviction court stated that trial counsel "did nothing improper" and that trial counsel "had no errors" in his representation of Petitioner. In its order denying relief, the post-conviction court found that trial counsel "specifically testified that Petitioner's decision not to participate in the presentence report limited the nature in which mitigating evidence would be admissible during the trial."

We conclude that the post-conviction court properly denied relief on this ground. It is unclear from the record before us why Petitioner did not participate in the preparation of the presentence report. Trial counsel was unaware of any mental health problems that Petitioner may have had that could have been presented as mitigating evidence. Additionally, Petitioner did not present any evidence that he asserted should have been included in the presentence report, such as evidence of a mental health condition. Thus, Petitioner has established neither deficient performance nor prejudice, and he is not entitled to relief on this ground.

## **Conclusion**

After reviewing the facts and applicable case law and statutes, we affirm the post-conviction court's denial of relief.

_____
ROBERT L. HOLLOWAY, JR., JUDGE