IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
Assigned on Briefs September 28, 2021

**DOMINICK RATLIFF v. STATE OF TENNESSEE**

**Appeal from the Criminal Court for Knox County**
**Nos. 116231, 116342     Kyle A. Hixson, Judge**
_____

**No. E2020-01664-CCA-R3-PC**
_____

In Case No. 113496, Dominick Ratliff, Petitioner, pled guilty to possession with intent to deliver more than 0.5 grams of methamphetamine in a drug-free zone and received a sentence of fifteen years' incarceration with a 100 percent release eligibility. In Case No. 112791,[1] Petitioner pled guilty to possession with intent to deliver more than 0.5 grams of methamphetamine and simple possession of a Schedule IV controlled substance. Pursuant to the plea agreement, Petitioner received concurrent sentences of eight years' incarceration with a thirty percent release eligibility and eleven months and twenty-nine days' incarceration, respectively. The trial court ran the sentences in both cases concurrently, for an effective fifteen-year sentence with a 100 percent release eligibility. Petitioner filed a timely post-conviction petition, alleging in part that his plea was unknowing and involuntary. The post-conviction court denied relief, and Petitioner now appeals. Following a thorough review of the record and law, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT L. HOLLOWAY, JR., J., delivered the opinion of the court, in which ROBERT H. MONTGOMERY, JR., and TIMOTHY L. EASTER, JJ., joined.

J. Liddell Kirk, Knoxville, Tennessee, for the appellant, Dominick Ratliff.

Herbert H. Slatery III, Attorney General and Reporter; Edwin Alan Groves, Jr., Assistant Attorney General; Charme P. Allen, District Attorney General; and TaKisha Fitzgerald, Assistant District Attorney General, for the appellee, State of Tennessee.

---

[1] The judgment forms for Case No. 112791 do not appear in the record; however, we gleaned Petitioner's sentences in this case from the guilty plea submission hearing transcript.

# OPINION

## Factual and Procedural History

*Guilty Plea Submission Hearing*

On April 22, 2019, the State presented the following facts to support Petitioner's guilty plea:

> The proof would be that the incident occurred -- first, in docket number 112791, the incident occurred on October 6th, 2017, [on] Dunhill Way. Officers arrived on the scene for a possible drug overdose. And as the officers [] entered the apartment, paramedics and fire department were rendering aid to [Petitioner] because he had overdosed on heroin. [Petitioner] was transported to Fort Sanders Hospital for further treatment.
>
> In plain view, sitting on the couch was a purple Crown Royal bag. The bag was opened and the officers could see a large amount of cash in the bag. Upon further investigation, the officers opened the bag and found $2,350 in cash and a large plastic bag containing three smaller bags. The smaller bag contained a clear, crystal-like substance believed to be crystal meth. One bag weighed two ounces and the two smaller bags weighed an ounce each, for a total of four ounces.
>
> The bag was sitting beside [Petitioner]'s two cell phones on the couch. There's a witness, Ms. Goins, who was also in the apartment and admitted [to] Investigator Spence [that] the drugs and money belonged to [Petitioner] and [that] he sells crystal meth to support his heroin addiction.
>
> Further proof would be that those phones were confiscated and analyzed. Further proof would be that warrants were placed on file for [Petitioner]. Officers with the Knoxville Police Department were aware of [Petitioner] and that he had these outstanding warrants.
>
> The proof would be that in docket number 113496, that officers with the Knoxville Police Department, that they did encounter [Petitioner] while he was sitting in a pickup truck off Cansler. And this location was within 1,000 feet of a public elementary school.
>
> Proof would be that they encountered [Petitioner] to serve the warrants that were outstanding on him. When they got [Petitioner] out of the

truck, they put him in custody. And in the vehicle officers recovered a large bag of methamphetamine, more than 26 grams of methamphetamine. The proof would be that this took place within 1,000 feet of the school.

Further proof would be that the drugs that were confiscated for this incident that occurred on October 14th w[ere] sent to TBI for analysis. Based upon the examination, TBI concluded that it was well over 27 grams of methamphetamine, a Schedule II controlled substance.

Proof would be that the drugs . . . in the first incident w[ere] sent to TBI and, again, those drugs -- TBI was able to determine that it was meth and it was 111 grams of methamphetamine, a Schedule II controlled substance.

Analysis of the cell phone revealed that [Petitioner] had talked about selling -- the price of methamphetamine. Further proof would be that all these events took place in Knox County.

The amount of meth, the manner in which it was packaged, the lack of use paraphernalia and because of the text messages, officers were able to determine that the meth was packaged with the intent to resell. Additionally, there was marijuana in the first incident and that was in an amount for personal use.

Further proof would be that all these events took place in Knox County.

*Post-Conviction Petition and Hearing*

Petitioner filed a timely pro se post-conviction petition[2] and an amended petition through counsel, arguing that his guilty plea was involuntary and unknowing and that he was denied the effective assistance of counsel.

At the post-conviction hearing, Petitioner testified that, prior to his guilty plea, he met with trial counsel and her private investigator. He explained that, at the time of the offense, he was 709 feet away from the school and that he was told the drug-free zone statute was going to change from 1,000 feet to 500 feet soon thereafter. Petitioner stated

---

[2] Petitioner also filed a pro se Rule 36.1 Motion to Correct Illegal Sentence, a pro se Motion to Withdraw Guilty Plea, a pro se Petition for Sentencing Relief, and a pro se Motion for Compassionate Release Due to Extraordinary and Compelling Reasons or to Vacate Sentence. These four motions were included as Exhibits in the post-conviction hearing.

that "they" said that "[t]he law's changed.  When they change, I promise, you'll get back into court.  You'll be back."

Petitioner recalled that trial counsel explained the charges against him but did not remember if she showed him a map or anything indicating one offense occurred in a drug-free zone.  Petitioner said that trial counsel and the investigator both believed that the offense occurred within the drug-free zone.  Petitioner stated that trial counsel had no strategy to defend him.  He explained that "the whole time she was like it was cut and closed. . . .  You going to get found guilty."  Petitioner said that he told trial counsel he had overdosed on methamphetamine but that trial counsel never "point[ed] out [his] addiction."

Petitioner recalled:

[I]t's been rumors about, you know, you know -- how [General Fitzgerald] get down so explicit with the judge, and "You fixing to get smacked," so of course I'm spooked at that point.  Let's go ahead -- I'm fixing to go ahead and take this [plea] because I know how [General Fitzgerald] get down, and I ain't fixing to play with this woman.

Petitioner stated that he agreed to the plea bargain to "do away with all the tears and [his] people crying."  Petitioner testified that trial counsel told him, "I can't tell you what to do but . . . this [plea] is the best thing."  He agreed that trial counsel's advice was right because he did not want to "mess with" the prosecutor.  Petitioner testified that trial counsel told him, "You'll probably get a fair trial," but Petitioner knew how tough the prosecutor was and did not believe that he would get a fair trial.  He said he thought that, based on "people" who had been "released on appeal," the prosecutor would "hold back some evidence, anything."

On cross-examination, Petitioner agreed that, in his pro se motions to withdraw his guilty plea and for a reduction of sentence, he did not allege that trial counsel told him that he would "get the time back if the law changed[.]"  Petitioner agreed that, at the time of the offenses, his girlfriend told police that Petitioner sold methamphetamine to support his heroin addiction.  Petitioner recalled that, during the guilty plea submission hearing, he told the trial court that no one had threatened or coerced him into pleading guilty.

Trial counsel testified that she filed a Motion to Suppress and that it was denied.  She explained to Petitioner that, if he went to trial and was convicted, she would be able to appeal the suppression issue.  She recalled that she spent "many hours" preparing for trial and that she did not receive a plea offer from the State until the day of trial.  Trial counsel stated that she had prepared a trial strategy using Petitioner's addiction to show that the

drugs were for personal use and not for sale or delivery. She went over the map with Petitioner showing his location relative to the school.

Trial counsel said that she explained to Petitioner the implications of the drug-free zone law to his sentence. Trial counsel testified that she told Petitioner that, due to the drug-free zone statute, his sentence from a trial would likely be "way more than [fifteen] years." She said that Petitioner wanted a plea offer and told her, "Get me an offer less than that." Once the State made the offer on the scheduled date of trial, trial counsel told Petitioner, "I cannot make that decision for you. You know, you have the [fifteen]-year offer. If we go to trial, you're going to get, you know, sentenced [to] more than [fifteen] years."

Trial counsel did not recall telling Petitioner that he would not get a fair trial if he rejected the plea offer. She did not recall telling Petitioner anything about the possible makeup of the jury. Trial counsel denied that she ever told Petitioner that his plea or sentence would change if the law changed. She explained:

> I will say in meeting with [Petitioner,] we discussed he didn't agree with the thousand square feet, you know, from the drug-free zone. He thought that was ridiculous. I told him, I said, you know, "I can't you know, there's a lot of people that don't agree with it, but that is the law. You know, it could change some day in the future, but today this is the law. It could change some day."

Trial counsel explained, "I absolutely didn't say, 'If the law changes, you'll be back in court.' That, I did not say." Trial counsel stated that she and Petitioner did not discuss the possible change in the drug-free zone law on the day Petitioner was offered the plea.

On cross-examination, trial counsel explained that she had seven years' experience as a criminal defense attorney and that she received several advocacy awards. She said that, when she received Petitioner's case, she immediately employed a private investigator. She explained that she met with Petitioner many times and went over trial strategy and the strengths and weaknesses of his case.

Sean Rice testified that he was hired as a private investigator for Petitioner's case. Mr. Rice stated that he and trial counsel met with Petitioner and showed Petitioner videos from discovery. He said that he was present on the day Petitioner received his plea offer and that he did not recall trial counsel ever saying anything to Petitioner about getting "time back" if the law changes. He did not recall any discussion with Petitioner regarding whether the drug-free zone law would change. Mr. Rice remembered explaining to

Petitioner that he was within the 1,000-foot boundary around a school at the time of the offense and remembered showing Petitioner a "KGIS" map.

*Order Denying Post-Conviction Relief*

In a written order, the post-conviction court found that Petitioner "knew he would be found guilty" at trial and that he pled guilty in part to "avoid the tears of his family." It stated that Petitioner testified that trial counsel could not "tell him what to do" regarding the plea offer and that she told Petitioner he would receive a fair trial if he rejected the offer. It found that Petitioner's assessment that he would not receive a fair trial was "based upon his own personal opinion of the prosecutor assigned to the case." The post-conviction court concluded that Petitioner's plea was knowing and voluntary and that trial counsel was not deficient in her recommendations regarding the plea.

The post-conviction court accredited the testimony of trial counsel and Mr. Rice that trial counsel never advised Petitioner that his sentence would change if the drug-free zone statute changed. It concluded that this ground was waived because it was not pled in the post-conviction petition but was only raised at the post-conviction hearing. It further concluded that Petitioner failed to prove that trial counsel was deficient because trial counsel did not advise Petitioner that his sentence would change if the law changed.

Based on these findings, the post-conviction court denied relief. This timely appeal follows.

**<u>Analysis</u>**

On appeal, Petitioner contends that his guilty plea was unknowing and involuntary. Petitioner argues that his testimony at the post-conviction hearing "revealed confusion generally about his culpability in the case, the reasons he pled guilty, what all he discussed about the evidence in his case with [t]rial [c]ounsel, whether his guilty plea was a final resolution of his case, and even the actual effective sentence he received." He argues that, "perhaps" he was "unable to reasonably evaluate the terms of the offered plea bargain against the option of going to trial on the charges against him."

The State responds that Petitioner "actively sought a plea and was not induced to plea due to a lack of understanding the proof or law."

Whether a guilty plea is intelligent and voluntary is a mixed question of law and fact. *Jaco v. State*, 120 S.W.3d 828, 830-31 (Tenn. 2003). Therefore, in such cases we review the post-conviction court's findings of fact *de novo* with a presumption of

correctness. *Id.* The post-conviction court's findings of law are reviewed purely *de novo*. *Id.*

When reviewing a guilty plea, this court looks to both the federal standard as announced in the landmark case *Boykin v. Alabama*, 395 U.S. 238 (1969), and the state standard as announced in *State v. Mackey*, 553 S.W.2d 337 (Tenn. 1977), *superseded on other grounds by* Tenn. R. Crim. P. 37(b) and Tenn. R. App. P. 3(b). *Don Allen Rodgers v. State*, No. W2011-00632-CCA-R3-PC, 2012 WL 1478764, at *5 (Tenn. Crim. App. Apr. 26, 2012). Under the federal standard, there must be an affirmative showing that the plea was "intelligent and voluntary." *Boykin*, 395 U.S. at 242. Likewise, the Tennessee Supreme Court has held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e. that he has been made aware of the significant consequences of such a plea . . . ." *Mackey*, 553 S.W.2d at 340. "[A] plea is not 'voluntary' if it is the product of '[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . .'" *Blankenship v. State*, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting *Boykin*, 395 U.S. at 242-43).

In order to determine whether a plea is intelligent and voluntary, the trial court must "canvass[] the matter with the accused to make sure he has a full understanding of what the plea connotes and of its consequence." *Boykin*, 395 U.S. at 244. The trial court looks to several factors before accepting a plea, including:

> [T]he relative intelligence of the defendant; degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

*Blankenship*, 858 S.W.2d at 904; *Howell v. State*, 185 S.W.3d 319, 330-31 (Tenn. 2006). Once the trial court has conducted a proper plea colloquy, it discharges its duty to assess the voluntary and intelligent nature of the plea and creates an adequate record for any subsequent review. *Boykin*, 395 U.S. at 244.

Statements made by a petitioner, his attorney, and the prosecutor during the plea colloquy, as well as any findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings." *Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977). Statements made in open court carry a strong presumption of truth, and to overcome such presumption, a petitioner must present more than "conclusory allegations unsupported by specifics." *Id.* at 74.

At Petitioner's guilty plea submission hearing, the trial court asked Petitioner a series of questions regarding the knowing and voluntary nature of Petitioner's plea. Petitioner stated that he was not impaired from drugs or alcohol and that he understood his sentence would be fifteen years with a 100 percent release eligibility. Petitioner stated that he understood that he would have a permanent record of conviction which could be used to enhance any subsequent convictions. Petitioner agreed that he and trial counsel had a chance to go over the plea agreement prior to the hearing and that he understood it "for the most part[.]"

Petitioner said that he understood that, by pleading guilty, he was giving up his right to a jury trial where he would be presumed not guilty. He understood that, by pleading guilty, he was giving up the right to confront the witnesses against him and his right to remain silent. The following exchange occurred:

THE COURT: [Petitioner], are you entering into this agreement freely and voluntarily and knowingly?

[PETITIONER]: Yeah.

THE COURT: Has anyone threatened you in any way or promised you anything to get you to plead guilty?

[PETITIONER]: No.

THE COURT: Are you pleading guilty because you are, in fact, guilty?

[PETITIONER]: I guess.

THE COURT: Are you satisfied with the services of your attorney?

[PETITIONER]: Yeah.

These statements during the plea colloquy, as well as the findings made by the trial court in accepting the plea, "constitute a formidable barrier in any subsequent collateral proceedings" and carry a strong presumption of truth. *Id.* at 73-74.

Moreover, the post-conviction court found that Petitioner "knew he would be found guilty" at trial and that he pled guilty in part to "avoid the tears of his family." It accredited trial counsel's testimony and found that trial counsel never told Petitioner that his sentence would change in the future if the drug-free zone statute changed. The record supports the post-conviction court's findings.

Further, Petitioner testified at the post-conviction hearing that trial counsel told him he would receive a fair trial, but Petitioner believed he would not receive a fair trial based on "rumors" about the prosecutor's reputation. Such rumors, even if true, do not amount to "[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats" in choosing to accept a plea agreement. *Blankenship*, 858 S.W.2d at 904; *see e.g., State v. Robert Martin*, No. 36083, 1977 WL 201375, at *3 (Ohio Ct. App. May 26, 1977) (concluding that a trial court's "great emphasis" on the prosecutor's strong ability and reputation were "irrelevant to the voluntary and understanding nature of the plea"). Trial counsel testified that she was ready for trial and that Petitioner sought out a plea offer. Nothing in the record overcomes the "strong presumption of truth" of Petitioner's statements in his guilty plea submission hearing. *Blackledge*, 431 U.S. at 73-74. Petitioner is not entitled to relief.

## Conclusion

For the foregoing reasons, the judgment of the post-conviction court is affirmed.

_____
ROBERT L. HOLLOWAY, JR., JUDGE